(97 South. 73)

REEDER v. STATE. (8 Div. 563.)

(Supreme Court of Alabama. June 7, 1923. Rehearing Denied June 30, 1923.)

1. **Homicide ⊜═131—Averment in indictment charging killing "of female child who had no name" held sufficient.**

In a charge of infanticide an averment of the indictment that defendant unlawfully and with malice "killed a female child who had no name, the child of J.," was a sufficient averment of the surname of the child.

2. **Criminal law ⊜═1153(4)—Rulings on latitude of cross-examination not interfered with unless prejudice is shown.**

In cross-examination of witness there is a wide latitude resting in the sound discretion of the court, and, unless it appears that palpable error has been committed to prejudice defendant in limiting his right of cross-examination, such rulings will not be interfered with.

3. **Criminal law ⊜═390—Question calling for answer showing uncommunicated motive or intention called for inadmissible testimony.**

A question, "Did you intend to put anything on it?" called for an uncommunicated motive or intention that was not admissible.

4. **Homicide ⊜═166(4)—Evidence that defendant was illegitimate father of newly born child admissible to show motive for its destruction.**

In a prosecution for infanticide, evidence that defendant was the illegitimate father of the child was admissible as tending to show motive on his part for its destruction.

5. **Homicide ⊜═166(4)—Evidence tending to show that defendant was not father of the child held admissible.**

In a prosecution for infanticide, it was proper to cross-examine the mother of the child to show that within the period of gestation she had consorted with men other than defendant, as tending to shed light on her positive statement that defendant was the child's father.

6. Homicide ⟐166(4)—Sustaining objection to question to mother of deceased illegitimate child, as to her consorting with other men prior to the period of gestation, held proper.

In a prosecution for infanticide, sustaining objections to questions to the mother of the child, as to whether she had consorted with men other than defendant at a time not within 9 or 10 months of the date of the birth and death of the murdered child, was proper.

7. Homicide ⟐166(4)—Evidence of a third person protesting to mother of illegitimate child as to her condition held immaterial.

In a prosecution for infanticide, evidence that a third person protested to the mother of an illegitimate child as to her condition, and warned her in respect thereto, was immaterial.

8. Witnesses ⟐344(2) — Evidence as to whether witness was married, and as to parentage of her child, held immaterial.

In a prosecution for infanticide, where the illegitimate mother of the child had stated that Mrs. M. had never asked her what was the matter with her, objections to questions to M. as to whether she had ever been married, or the nature of her private relations, or the parentage of her children, were properly sustained as immaterial.

9. Homicide ⟐174(1)—Evidence by witness who found body of child that another told him of finding a piece of quilt out there held properly excluded.

In a prosecution for infanticide, after witness stated that he discovered the body of the dead child, sustaining objection as to whether another had not told him that she found a piece of quilt out there, and asked what to do about it, was proper.

10. Homicide ⟐169(7)—Evidence of conversation between defendant and doctor tending to show motive held admissible.

In a prosecution for infanticide, evidence of conversation between defendant and a doctor tending to show motive on defendant's part to create an abortion of the mother of the illegitimate child was admissible.

11. Criminal law ⟐448(3)—Evidence calling for uncommunicated motive or impressions of defendant held admissible.

In a prosecution for infanticide, where the theory of the state was that defendant crushed the skull of a newly born infant and then buried the body, there was no error in not permitting defendant's counsel to ask him whether there was any occasion for him to wash his boots, which, if not calling for uncommunicated motive or the impressions of the defendant, at least called for a conclusion in the nature of self-serving testimony.

12. Criminal law ⟐1056(1) — On failure to object to oral charges nothing is presented for review.

Where oral charges are given and no exception reserved thereto, nothing is presented for review.

13. Criminal law ⟐789(15) — Requested charge on probability of innocence held bad.

In a prosecution for infanticide, defendant's requested charges that if there was a probability of his innocence he should not be found guilty, and that the probability of his innocence was a just foundation for a reasonable doubt of his guilt, and therefore for his acquittal, were bad.

14. Criminal law ⟐763, 764(24)—Refusal of charges invasive of jury's province held proper.

In a prosecution for infanticide, requested charges that, if the evidence could be construed so as to find some party other than defendant killed deceased, then to acquit although it was probable that defendant killed deceased, and, if the evidence can be construed in such a way so as to be consistent with the theory that some other one did the killing, then to acquit, were invasive of the province of the jury, and refusal thereof was not error.

15. Criminal law ⟐782(7)—Refusing of confusing and contradictory charge not error.

In a prosecution for infanticide, a requested charge that if the evidence was such that two conclusions could reasonably be drawn from it, one of which favoring defendant's innocence and the other tending to establish guilt, to acquit although it was probable that defendant was guilty, was bad in form, confusing and contradictory, and refusal thereof was not error.

16. Criminal law ⟐815(1)—Refusal of charge not requiring consideration of evidence by jury held proper.

In a prosecution for infanticide, where requested charge did not require consideration of evidence by the jury, refusal thereof was proper.

17. Criminal law ⟐785(16) — Refusal of charge as to credibility of witnesses held proper.

In a prosecution for infanticide, requested charge that, if witnesses had been contradicted in any material fact, then to disregard their entire testimony, if the jury saw proper so to do, was bad, for the reason that, although a witness might be contradicted on a material issue, the jury might not believe testimony of the contradicting witness and believe the testimony of the witness so contradicted, and refusal of such charge was not error.

18. Criminal law ⟐785(16) — Refusal of charge not hypothesizing evidence as willfully or corruptly false, proper.

In a prosecution for infanticide, a requested charge that, if any witness had sworn falsely as to any material fact, then to disregard his entire testimony, if the jury saw proper, did not require consideration of questions of evidence, and did not hypothesize that testimony of the witness was willfully or corruptly false, and refusal thereof was not error.

19. Witnesses ⟐317(2)—Testimony must be willfully or corruptly false to be disregarded.

It is not sufficient that a witness testify falsely that his evidence may be disregarded,

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

but the testimony must be willfully or corruptly false.

**20. Criminal law ☞829(1)—Refusal of charge covered by oral charges not error.**

Where a charge was fully covered in given charges and the oral charge, refusal thereof was not error.

**21. Criminal law ☞830—Refusal of charge containing verbal inaccuracy not error.**

Where an instruction contained a verbal inaccuracy, "convicing" for "conviction," its refusal was justified.

**22. Criminal law ☞799—Charge as to what solicitor said in closing argument held misleading.**

In a prosecution for infanticide, a charge that what the solicitor had said in his closing argument was not evidence, and the only evidence was that of the witnesses, and which did not set out what was said by the solicitor, was misleading, and its refusal not error.

**23. Criminal law ☞813—Refusal of abstract charge not error.**

The refusal of abstract charge is not error.

**24. Criminal law ☞829(1)—Refusal of charge covered by charges given not error.**

In a prosecution for infanticide where requested charges were covered in substance by charges given, there was no error in their refusal.

Appeal from Circuit Court, Morgan County; Osceola Kyle, Judge.

Jim Reeder was convicted of murder in the first degree, and appeals. Affirmed.

Charges 30 and 31, given for defendant, are as follows:

"30. If there is a probability of defendant's innocence, he should not be found guilty.

"31. The probability of defendant's innocence is a just foundation for a reasonable doubt of his guilt, and therefore for his acquittal."

After reading charge 30 to the jury, the court stated:

"Now, I explain that charge to you by saying that the word 'probability' means that, if there is more evidence of the defendant's innocence than there is of his guilt, then he should be found 'not guilty.'"

And after reading charge 31, stated:

"I explain that charge to you, gentlemen, by saying this word 'probability' means if there is more evidence of his innocence than there is of his guilt, which means that if there is more evidence of the defendant's innocence than there is of his guilt, that there is a just foundation for a reasonable doubt of his guilt, and therefore for his acquittal."

The following charges were refused to defendant:

"9. I charge you, gentlemen of the jury, that if you could reasonably construe the evidence in this case so as to find that some party other than the defendant killed the deceased, then you must acquit the defendant, although you believe it probable that the defendant killed the deceased.

"10. I charge you, gentlemen of the jury, that although you may think that it is probable that the defendant killed the deceased, still, if you can reasonably construe the evidence in such a way as to be consistent with the theory that some one other than the defendant killed the deceased, you must acquit him.

"14. I charge you, gentlemen of the jury, that, before you should convict the defendant in this case, the hypothesis of guilt should flow naturally from facts proven and be consistent with all of them.

"22. I charge you that, if the testimony in this case in its weight and effect be such as that two conclusions can be reasonably drawn from it, the one favoring the defendant's innocence and the other tending to establish his guilt, you must acquit the defendant, although you think it probable that he is guilty.

"23. I charge you, gentlemen of the jury, that, if the witness Mrs. Morgan has been contradicted in any material fact, then you may disregard her entire testimony, if you see proper so to do.

"24. I charge you, gentlemen of the jury, that, if any witness in this case has sworn falsely to any material fact in this case, then you may disregard his or her entire testimony, if you see proper so to do.

"25. I charge you that, if any witness has been contradicted upon any material fact in this case, then you may disregard his or her testimony, if you see proper so to do.

"37. I charge you, gentlemen of the jury, that what the solicitor has said in his closing argument in this case is not evidence, and the only evidence in this case is the testimony of the witnesses that have been introduced, and you, and each of you, should be convinced beyond a reasonable doubt, from the evidence in the case, that the defendant is guilty before convicting the defendant."

Wert & Hutson, of Decatur, and J. N. Powell, of Albany, for appellant.

The indictment was insufficient in designating the name of the child alleged to have been killed. Jones v. State, 63 Ala. 27; Butler v. State, 17 Ala. App. 511, 85 South. 864; O'Brien v. State, 91 Ala. 27, 8 South. 560; Morningstar v. State, 52 Ala. 405; Wilson v. State, 128 Ala. 17, 29 South. 569. Charge 14 was a correct statement and should have been given. Gilmore v. State, 99 Ala. 154, 13 South. 536; Brown v. State, 150 Ala. 25, 43 South. 194; Neilson v. State, 146 Ala. 683, 40 South. 221. Charges 10, 23, 24, and 25 were each correct and should have been given. Bryant v. State, 116 Ala. 445, 23 South. 40; Churchwell v. State, 117 Ala. 124, 23 South. 72.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The person killed was sufficiently designated, and demurrer to the indictment was

properly overruled. Reese v. State, 90 Ala. 624, 8 South. 818. Where no exception is reserved to oral instructions, nothing is presented for review. Ex parte State, 204 Ala. 389, 85 South. 785. Charges 9, 10, and 22 were bad in form. Lee v. State, 18 Ala. App. 566, 93 South. 59. Charges not predicating the finding of the jury upon consideration of the evidence are bad. Edwards v. State, 205 Ala. 160, 87 South. 179.

THOMAS, J. The charge was infanticide. The conviction and punishment were for murder in the first degree, by imprisonment for life.

[1] The indictment was not subject to demurrer interposed. Reese v. State, 90 Ala. 624, 8 South. 818. The fifth or last count of the indictment charges that Jim Reeder "unlawfully and with malice aforethought killed a female child who had no name, the child of Emma Johnson, by crushing her skull," etc. This is a sufficient averment of the surname of the child, it being averred that it was the "child of Emma Johnson." The failure of allegation of the given or Christian name of the female child, who is averred to have been unlawfully killed, is met by the averment that it "had no name," and there were no contradictory averments as to the name of the child, as is insisted by appellant.

In Jones v. State, 63 Ala. 27, the holding was that an indictment which described the defendant as "Douglass Jones, alias Dug Jones, whose true Christian name is to this grand jury unknown," is inconsistent, and will not support a conviction. That indictment does not present a parallel to the instant count. In the case of O'Brien v. State, 91 Ala. 25, 8 South. 560, the indictment charged that "W. P. O'Brien, whose Christian name is to the grand jury unknown," etc., and was held as an averment by the grand jury that the defendant had a Christian name, not expressed by the letters used (W. P.), but which was to the grand jury unknown. The announcement is contained in Morningstar v. State, 52 Ala. 405, as to the description, with certainty, required as to the party injured by the larceny, that an indictment which described the owner of the property stolen by her surname only, without any averment that her Christian name was unknown to the grand jury, was bad on demurrer. It will be observed of that issue that the inquiry was of the ownership of the property, and hence the requirement that both the Christian and surname should be stated. In the case of Wilson v. State, 128 Ala. 17, 25, 29 South. 569, 571, the indictment was for murder, naming the defendant as "Robert Wilson, alias Duncan," and charged him with the murder of "Clarissa, alias Clara King, alias Cain," and the court said that the offense was charged in the Code form, and that:

"It was permissible to name the defendant under an alias. * * * If the indictment lacks certainty concerning the identity of the person killed, or lacks averment excusing uncertainty in that respect as that person was not otherwise known to the grand jury, than as therein named, such defects might have been available here if they had been made in the trial court."

In Viberg v. State, 138 Ala. 100, 35 South. 53, 100 Am. St. Rep. 22, it was said that it was unnecessary to repeat the Christian name before the surname if the name of the defendant was averred under an alias. See, also, Haley v. State, 63 Ala. 89. The foregoing cases were not to the effect that the ground of demurrer assigned to the fifth or last count of the instant indictment should have been sustained. There was no uncertainty in this count, in which the murder charged was that of the infant child of Emma Johnson, it being averred that said child had not been given a Christian name. There was no error in overruling demurrer to the indictment.

[2, 3] All the rulings on the testimony were made on the cross-examination of witnesses, with two exceptions to which we shall refer later. It is a well-settled rule that in the cross-examination of witnesses there is a wide latitude resting in the sound discretion of the court, and unless it appear that palpable error has been committed to the prejudice of the defendant, in limiting his right of cross-examination, such rulings will not be interfered with. 14 Mich. Ala. Dig. "Witnesses," § 189 et seq. p. 1148. The question propounded to the witness, "Did you intend to put anything on it?" to which the state objected and was sustained, and to which defendant duly excepted, called for an uncommunicated motive or intention that was not admissible. 1 Mayf. Ala. Dig. § 15, p. 329.

[4] The state proved without objection that defendant was the father of the newborn infant that was murdered; that defendant was in close proximity when the child was born, and came at a later hour during the night and took it away; that the dead body was found next morning, buried near the place of its birth; that its skull was crushed; and that this latter fact tended to show that its death was caused by violence at the hands of some human agency, rather than by being exposed to the cold or by freezing. Evidence that defendant was the illegitimate father of the child was admitted (with other evidence) as tending to show motive on his part for its destruction.

[5, 6] The defendant sought by cross-examination of the mother of the child to show that within the period of gestation she had consorted with men other than defendant. This tended to shed light upon the positive statement of the witness that defendant was the father of the child. However, the question, "Haven't you received the company of men frequently, and haven't you done so up there for many years?" was not sufficiently

definite as to call for the admission or denial of criminal intercourse on the part of witness, and was not confined to a time within 9 or 10 months (Henderson v. Henderson, ante, p. 73, 97 South. 353) of the date of the birth and death of the murdered child. The subsequent questions, however, which sought to be more definite in the respects we have indicated before the birth of the child on February 8, 1921, were objected to by the state, and, when such objections were sustained, defendant duly reserved exceptions to such rulings. However, each of these questions was irrelevant, as inquiring of the witness her illicit relations with other men prior to the period of gestation of the infant that was murdered. Henderson v. Henderson, ante, p. 73, 97 South. 353; Jee v. Audley, 1 Cox's Ch. Cases, 324, 325. There was no error in sustaining the several objections of the state to the questions indicated.

[7, 8] The fact that one Winsett protested to witness of her condition, and warned her in respects indicated, was immaterial to the inquiry on defendant's trial for murder. Witness had stated that Mrs. Morgan never asked her what was the matter with her, and that she did not tell her (Mrs. Morgan)—did not say, on the morning after the birth of the child, that she had neuralgia. There was no error in declining to permit the witness to be further cross-examined by being asked, "What did you tell her was the matter with you?" The witness had stated she had told Mrs. Morgan she "was sick." The further matter sought to be inquired about was immaterial. The questions to Mrs. Morgan, sought to be propounded by defendant, as to whether or not she had ever been married, and of the nature of her private relations, or of the parentage of her children, were immaterial.

[9] The witness Thomason, having testified to the discovery of the body of the dead child, was sought to be asked by the defendant on cross-examination: "Did Mrs. Addie Winsett tell you she found a piece of quilt out there, and ask you what to do about it?" The objection of the state was properly sustained to the irrelevant inquiry.

[10] The testimony given by Dr. Beck, on behalf of the state, tended to show motive on defendant's part to create an abortion of Emma Johnson, who was "quick with the child" that was delivered and then murdered. The conversation had by defendant Reeder with that doctor had specific reference to Emma Johnson's being enceinte.

[11] There was no error in not permitting defendant's counsel to ask him, "Was there any occasion to wash your boots?" Defendant had stated that he did not wash his boots and hands, as Mrs. Morgan had testified. The condition of the boots immediately preceding the time indicated and the opportunity offered to soil them were matters of inquiry that may have been pursued. The question, "Was there any occasion to wash your boots," if not calling for uncommunicated motive or impressions of the defendant (1 Mayf. Ala. Dig. 329), at least called for a conclusion of the witness in the nature of self-serving testimony. However, the question was immediately changed by the counsel for defendant, as follows: "Was there anything on your boots which was necessary to be washed?" There being objection on the part of the state, and the same having been sustained, defendant reserved an exception. Thereupon the bill of exceptions recites that the witness, in answer to the question, "Was there any blood, mud, or any other foreign substance on your boots?" replied, "There might have been some mud on my boots; nothing else at all." No error was committed in the foregoing rulings of the trial court.

[12, 13] It is next insisted by counsel that reversible error was committed in the explanation made by the court of defendant's given charges 30 and 31. It is an established rule that where oral instructions are given to the jury by the court, and no exceptions are reserved thereto, nothing is presented to this court for review. Ex parte State, ex rel. Smith, Atty. Gen., 204 Ala. 389, 85 South. 785. It will be noted that exception is attempted to be reserved to the explanations made by the court. The exception does not appear in the bill of exceptions; such memorial is the only proper place for an exception as that indicated, in order that the ruling be reviewed. However, the charges are technically bad. Edwards v. State, 205 Ala. 160, 87 South. 179; Lakey v. State, 18 Ala. App. 442, 93 South. 51. The court fully charged upon the reasonable doubt, and did not detract therefrom in the instructions to the jury made the subject of these assignments of error.

[14] Refused charges 9 and 10 are bad in form, and invade the province of the jury. Lee v. State, 18 Ala. App. 566, 93 South. 59. Moreover, these charges were covered by given charges 8 and 11. Refused charge 11, "on Record, page 13," according to appellant's brief, is not so exhibited by the record, but appears as a given charge on page 10 of the record.

[15] Refused charge 22, covered by given charge 11, is bad in form, is confusing and contradictory. Lee v. State, supra.

[16, 17] Refused charges 23 and 25 do not require the consideration of the evidence in the case by the jury. Edwards v. State, 205 Ala. 160, 87 South. 179. These charges are bad for the further reason that, although a witness might be contradicted on a material issue, the jury might not believe the testimony of the contradicting witness, and believe the testimony of the witness so contradicted.

[18, 19] Refused charge 24 does not require a consideration of the evidence in the case

(Edwards v. State, supra), and does not hypothesize that the testimony of the witness is willfully or corruptly false. Robinson v. State, 18 Ala. App. 612, 93 South. 262. It is not sufficient that a witness testify falsely that his evidence may be disregarded, but the testimony must be willfully or corruptly false. The witness might testify falsely through mistake, and at the same time be entitled to credence.

Counsel for appellant refer to refused charge 28, "Record, page 15." There is no such charge. A given charge so numbered is to be found on page 11 of the record.

[20] Refusal of charge 35 was fully covered in given charges 34 and 36 and the oral charge.

[21, 22] Refused charge 37 contains a verbal inaccuracy—"convicing" for "conviction" and this justifies its refusal. However, the charge fails to set out what was said by the solicitor, which, so far as we can tell from the record, was based upon the evidence. It is misleading; while what the solicitor said is not evidence itself, the solicitor was authorized to indulge in a proper discussion of the evidence.

[23] Charge A was abstract. There is no evidence as to manslaughter.

[24] As to charge 14, it is covered in substance by other instructions. Charges to like import have been approved. Odom v. State, 172 Ala. 383, 55 South. 820; Gilmore v. State, 99 Ala. 154, 13 South. 536; Griffin v. State, 150 Ala. 53, 43 South. 197; Brown v. State, 150 Ala. 25, 43 South. 194. It will be observed that several charges were given by the court, at the request of the defendant, which we believe to have fully and fairly covered the same, viz., charges 12, 13, 15, 16, and 17.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.