### HANYE v. STATE. (7 Div. 435.)

(Supreme Court of Alabama. June 26, 1924.)

**1. Homicide ⬿216—Preliminary evidence held to justify admission of dying declaration.**

Preliminary evidence *held* to justify admitting testimony as to deceased's dying declaration.

**2. Criminal law ⬿363—Homicide ⬿214(1)—Dying declaration narrating difficulty, and testimony of deceased's 10 year old son, held admissible as part of res gestæ.**

Dying declaration narrating difficulty from time deceased first met accused until after shooting, which constituted continuous transaction, and testimony of deceased's 10 year old son, *held* admissible as part of res gestæ.

**3. Criminal law ⬿695(6)—Objection to dying declaration which includes portions clearly proper cannot be considered.**

Objection to dying declaration which includes portions clearly proper cannot be considered.

**4. Witnesses ⬿269(1)—That witness on cross-examination omitted testimony given on direct held merely to affect credibility, and not its admissibility.**

That witness, on cross-examination, asked to detail all that was said by accused omitted statement made on direct examination, merely affected his credibility, and not admissibility of testimony.

**5. Witnesses ⬿379(1)—It was not error to admit evidence as to statement by accused's father at variance with his testimony.**

It was not error to permit witness over objection to testify to statement made by accused's father on day of homicide at variance with material testimony of father at trial.

**6. Homicide ⬿300(4)—Charges held properly refused as argumentative.**

Charges requested by accused relating to plea of self-defense and to dying declaration of deceased *held* properly refused as argumentative.

**7. Homicide ⬿300(13)—Charge held properly refused as pretermitting consideration of accused's freedom from fault.**

In prosecution for murder, charge that, if accused acted as reasonable man fearing felony was about to be committed, he should be acquitted, *held* properly refused as pretermitting consideration of accused's freedom from fault.

**8. Criminal law ⬿913(4)—That punishment excessive cannot be presented for first time on motion for new trial.**

That punishment, was excessive cannot be presented for first time on motion for new trial.

**9. Criminal law ⬿918(10, 11)—In absence of request to postpone trial or to admonish jury, "weeping demonstration" by deceased's widow held no ground for new trial.**

In absence of request for postponement or to admonish jury, "weeping demonstration" by deceased's widow before jury was no ground for new trial, under rule that defendant cannot speculate on favorable verdict.

**10. Criminal law ⬿659—"Weeping demonstration" by deceased's widow, if prejudicial, could have been cured by admonition.**

Effect of "weeping demonstration" by deceased's widow before a jury, if prejudicial, could have been cured by admonition and instructions.

Appeal from Circuit Court, Cleburne County; A. P. Agee, Judge.

Harry Paul Hanye was convicted of murder in the second degree, and appeals. Affirmed.

The dying declaration of the deceased, as detailed by the attending physician, is in substance as follows:

"'Well, he [deceased] said that he met an automobile; I don't know that he stated which way he was going or which way the other car was going, but they met facing each other, and he was driving on the right-hand side of the road, and the other man was to the left, and

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

they hit, and the man got out of the car and came up to him and they were abusing him.' Defendant's counsel then moved the court to exclude the statement of said witness that the man came up to him [deceased] and abusing him, on the ground that it was illegal, irrelevant, incompetent, and inadmissible testimony. The court overruled said motion. * * * Witness further answered: 'And while he was abusing him and cursing him another gentleman came up.' Defendant's counsel then moved the court to exclude the statement, 'And while he was abusing and cursing him another gentleman came up,' on the ground that it calls for illegal, irrelevant, incompetent, and inadmissible testimony. The court overruled said motion. * * * Witness, continuing: 'And came up to the car and walked around on the right-hand side of his car that his little boy was on, and stepped on the running board. I think it is about like it was, as near as I can recollect it, and he says that they said, 'I will kill you, * * *' and fired a shot, and his statement was that this was the first one that struck him in the neck, and he said he was begging them during this time not to do that. He said he didn't know them. The deceased said he was begging them not to do it. * * * After the shot, when one of the men stepped on the running board, deceased said he reached in the back side of his car to get his pistol, which was under the cushion, and they beat him to it and shot him the last time with his own gun. * * * That was after he was shot. I can't tell any more than that; that is all I know. He was just shot twice. He said the man that shot him last wasn't the man that shot him first. * * * Of course, deceased said a good deal, but that is all he said about the actual shooting. I asked him if there was more than one man shot him, and he said, 'Yes; there were two.' The deceased did not describe the two men no more than to say the young and the old man, and he said the young man shot him first; he didn't say the old man shot him first, but he said that the man who shot him first didn't shoot him last, and shot him with his own gun.''

The father of defendant, testifying as a witness, stated that after the collision deceased fired at members of his party; that he went to deceased's car, slapped his hand to his neck, and took him out and took his gun; that as he went to deceased's car he heard two shots fired, but did not see it and did not know who fired them. On cross-examination he was asked if he had not in Heflin made a statement to the effect that he knew deceased was shot in the neck once, that he had his thumb in the wound when he was choking him loose from his pistol, and that when he-had choked him loose he would have finished him but could not get the gun to fire. Witness denied making the statement.

Witness Murphy testified that he heard defendant's father make the statement indicated.

Charges 21, 25, and 26, refused to defendant, are as follows:

"(21) I charge you, gentlemen of the jury, that if you believe from all the circumstances of the case that the situation was such as to excite the fear of a reasonable man in the situation of defendant that a felony was about to be committed upon him or that his life was in danger from act of deceased, and if he acted under the influence of all those fears, and not in a spirit of revenge, and took the life of deceased, then you should acquit him.

"(25) The court charges the jury that to them alone belongs the duty of determining what weight should be given to the dying statement of the deceased, if any were made by him: in weighing the declaration the jury should take into consideration the fact that the defendant was not present in person or by attorney when the statement was made, and that there was no opportunity for the jury to observe the manner of deceased at the time he made the statement so as to detect malice, ill-feeling, revenge, or other improper motive that may have influenced him, and that the deceased was not subject to prosecution for perjury if he made false statements.

"(26) The court charges the jury that the declarations of a dying person are admissible from the necessity of the case, but they should be received with caution for the reason that the declaration was not made under oath, and no opportunity for cross-examination was afforded the defendant, and that the declaration might be influenced against defendant. Circumstances surrounding the declaration should be weighed the same as those surrounding other evidence."

Merrill & Jones, of Heflin, for appellant.

The mere statement that deceased said he was going to die is not sufficient predicate for the admission of a dying declaration. Titus v. State, 117 Ala. 16, 23 South. 77; Justice v. State, 99 Ala. 180, 13 South. 658; Young v. State, 95 Ala. 4, 10 South. 913. Dying declarations are admissible only in a case where the evidence would be competent if the declarant was on the witness stand. A mere conclusion or an expression of opinion or belief of a dying man is inadmissible as a dying declaration. Pilcher v. State, 16 Ala. App. 237, 77 South. 75; Gissendanner v. State, 18 Ala. App. 199, 89 South. 835; Le Nier v. State, 19 Ala. App. 227, 96 South. 459; Norwood v. State, 11 Ala. App. 30, 65 South. 851; Brinkley v. State, 89 Ala. 34, 8 South. 22, 18 Am. St. Rep. 87. Statements of defendant's father made hours after the difficulty and not in defendant's presence, that he would have killed deceased if the gun had fired, or that he choked deceased were not admissible against defendant. Nalls v. State, 19 Ala. App. 146, 95 South. 591; James v. State, 115 Ala. 83, 22 South. 565. Refused charges 25 and 26 as to dying declaration should have been given. Shell v. State, 88 Ala. 14, 7 South. 40; State v. Hendricks, 172 Mo. 654, 73 S. W. 194; State v. Mayo, 42 Wash. 540, 85 Pac. 251, 7 Ann. Cas. 881. Refused charge 21 should have been given. Williams v. State, 120 Ga. 870, 48 S. E. 368. To secure a fair and impartial trial of a defendant nothing should occur

outside of the trial to disturb the minds of the jury. Leith v. State, 206 Ala. 439, 90 South. 687; Comm. v. Fisher, 226 Pa. 189, 75 Atl. 204, 134 Am. St. Rep. 1027, 26 L. R. A. (N. S.) 1009.

Harwell G. Davis, Atty. Gen., and O. B. Cornelius, Asst. Atty. Gen., for the State.

There was no error in admission of the dying declaration. Gerald v. State, 128 Ala. 12, 29 South. 614; Logan v. State, 149 Ala. 11, 43 South. 10; Smith v. State, 145 Ala. 17, 40 South. 957; Patterson v. State, 171 Ala. 2, 54 South. 696. The facts detailed were of the res gestæ. Sullivan v. State, 102 Ala., 135, 15 South. 264, 48 Am. St. Rep. 22; 1 Mayfield's Dig. 772. Predicate for the statement. attributed to defendant's father was sufficient. Burton v. State, 115 Ala. 1, 22 South. 585. Charge 21 was bad. 1 Mayfield's Dig. 806. The motion for new trial was properly overruled. Graves v. Rivers, 3 Ga. App. 510, 60 S. E. 274.

GARDNER, J. Appellant was jointly indicted with his father for the murder of one Ab. Giles. There was a severance. Defendant did not deny the shooting, but pleaded self-defense, and appellant's trial resulted in a conviction of murder in the second degree, from which this appeal is prosecuted.

The defendant, with his father, and members of their respective families, were touring in two automobiles from Atlanta, Ga., to a point in Mississippi, and while upon a narrow hill on a public road in Cleburne county met the deceased, there being a collision between the car of the deceased and that·of the defendant's father. The parties were strangers. After the passing of a few words a difficulty ensued, in which the deceased received two pistol shot wounds, one in the neck and the other in the chest, either of which, according to the evidence of the physician, was sufficient to produce death.

[1, 2] The difficulty occurred about 2:30 o'clock in the afternoon of Sunday, June 17, 1923. He received the attention of a physician about 4 o'clock the same afternoon, and died at 10 o'clock that night. The attending physician testified as to these mortal wounds, and that the deceased told him he was going to die. The physician also informed the deceased of his impending death. The court was fully justified in the light of this preliminary proof in admitting the evidence of the physician as to the dying declarations of the deceased. Gerald v. State, 128 Ala. 6, 29 South. 614; Patterson v. State, 171 Ala. 2, 54 South. 696. The dying declarations as testified to by the physician consist of a narrative of the entire difficulty from the time the deceased first met the defendant and his father in the road until after the shooting, all of which was one continuous transaction, and consequently formed a part of the res gestæ. B'ham, etc., Co. v. Tadrick, 205 Ala. 540, 88 South. 858, and authorities there cited. This observation also applies to the objection interposed to the testimony of Sam Giles, the 10 year old son of the deceased.

[3] There was no error in overruling the objection to that part of the dying statement containing the words "abusing him." While we are inclined to the view that all the circumstances clearly show these words had reference only to verbal abuse, and was merely a statement of a collective fact, yet the form of objection renders a consideration of that question unnecessary for the reason the objection specified also included other portions of the statements which were clearly proper, and no separate objection interposed to this particular language.

[4] One Richardson testified on direct-examination for the state that he lived about a quarter of a mile from the place where the shooting occurred, and went to the place, and that he talked with the defendant, who admitted he had shot the deceased. This witness also said that, according to his recollection, the defendant stated that he had taken the pistol from the deceased and shot him with his own gun. The fact that upon cross-examination, upon being asked in detail all that was said, the witness omitted this latter statement, did not render inadmissible the testimony to that effect, given by him on his direct examination; this was a matter affecting the credibility of the witness, and not the admissibility of the testimony.

[5] The witness Murphy was permitted, over defendant's objection, to testify to a statement which he heard the father of defendant make in Heflin the afternoon of the killing, which was at variance with some material features of defendant's father's testimony. A predicate therefor had been sufficiently laid when the defendant's father was on the stand, and we see no error in overruling the objection to this evidence. The testimony of witness·Hendrix for the state was in rebuttal, and this ground of objection is without merit.

Given charge 49 sufficiently instructed the jury as to the matter sought to be embraced in refused charges 60 and 61.

[6] Refused charges 25 and 26 were also argumentative, and properly refused.

[7] Refused charge 21 pretermits a consideration of freedom from fault on the part of the defendant, and there was no error in its refusal.

These are the only refused charges which are given attention in brief of counsel for appellant. There are others which we have carefully examined, but as to these it will suffice to say they were either defective, and properly refused upon that ground, or, in any event, fully covered both by the oral charge and the charges given at the request of the defendant, which consisted of quite a number.

Indeed, the oral charge of the court appears to cover every phase of the law bearing upon the issues in the case, which oral charge is supplemented, as previously stated, by a large number of given charges.

[8, 9] The defendant's motion for a new trial was overruled. The evidence was in sharp conflict; that for the state sufficient to sustain the charge of murder, and that for the defendant justifying him upon the plea of self-defense. The grounds of the motion for a new trial to the effect that the verdict of the jury was contrary to the evidence, and there was not sufficient evidence to justify a verdict of murder in the second degree, need no special consideration, as also the fourth ground, that the punishment was excessive. Whatever may be said as to this ground, we think it clear the question there sought to be presented could not be so presented for the first time on a motion for new trial. Wadsworth v. State, 18 Ala. App. 352, 92 South. 245. It is vigorously insisted, however, that the motion for a new trial should have been granted upon the sixth ground, in proof of which affidavits were offered. This ground of the motion is based upon the theory that after the conclusion of the argument in the case, about 5:30 in the afternoon, and after the court had announced an adjournment until 7:30 that night, the widow of the deceased walked to the table immediately in front of the jury stand, and in the presence of the jury, and upon which table lay the pistol of the deceased, and "staged a weeping demonstration," crying and sobbing in the presence of the jury There were affidavits offered by the defendant to the effect that special counsel assisting in the prosecution aided and abetted in this demonstration by going to the widow, taking her by the arm, and leading her to the table This is denied by special counsel, the widow, and one Ed. Giles in counter affidavits, and this denial is supported by the affidavit of eight of the jurors. It would seem, therefore, that the preponderance of the evidence sustains the contention that special counsel did not so aid and abet in this demonstration.

Upon the attention of the court being directed to this occurrence the trial judge immediately ordered the sheriff to escort the widow from the courtroom. There was no further or other request made of the trial judge. The widow of the deceased was only a witness and an interested spectator. All that occurred took place in the presence of the defendant and his counsel. There was no request for a delay or postponement of the trial or discharge of the jury, or that the court should give any instructions admonishing them against permitting themselves to be affected by any such demonstration. Having full knowledge and remaining silent, we are of the opinion the general rule applies to the defendant to the effect that he would have no right to thus speculate on the chance of a favorable verdict, and afterwards complain thereof as error on motion for a new trial. Greer v. Malone-Beall & Co., 196 Ala. 401, 72 South. 28; N. Y. Life Ins. Co v. Turner, 210 Ala. 197, 97 South. 687; 12 Cyc. 718.

[10] Moreover, we do not entertain the view that such demonstration was of so highly a prejudicial character as to be incapable of eradicating the effect thereof from the mind of the jury by proper admonition and instructions from the trial court. B. R., L. & P. Co. v. Gonzalas, 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543; B. R., L. & P. Co. v. Drennen, 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037; Davis v. State, 209 Ala. 409, 96 South. 187; Leith v. State, 206 Ala. 439, 90 South. 687; Moulton v. State, 199 Ala. 411, 74 South. 454; State v. Gray, 172 Mo. 430, 72 S. W. 698; Clements v. State, 123 Ga. 547, 51 S. E. 595; Graves v. Rivers, 3 Ga. App. 510, 60 S. E. 274.

The trial court saw and heard all that was done on this occasion, and the court has reached the conclusion that no reversible error appears in the action of the trial court in overruling the motion for a new trial.

We have here considered the questions presented in brief of counsel for appellant, but, mindful of our duty in cases of this character, have also considered the few remaining questions not treated by counsel, and not herein discussed. It will be sufficient to say that in them we find no error, and nothing of such importance as to call for separate treatment.

Finding no error in the record, the judgment of conviction will be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.