93 So.2d 757

**James Seldon LEE**

v.

**STATE of Alabama.**

7 Div. 303.

Supreme Court of Alabama.

March 14, 1957.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

Roberts & Orme, Gadsden, for appellant.

LAWSON, Justice.

James Seldon Lee was indicted for the offense of murder in the first degree by a grand jury of Etowah County and upon his trial upon said indictment was convicted of murder in the first degree and his punishment was fixed by the jury at death by electrocution. Judgment and sentence were in accord with the jury's verdict. A motion for new trial filed by counsel for Lee was overruled.

The appeal comes to this court under the provisions of Act No. 249, approved June 24, 1943, General Acts 1943, p. 217, which act provides for an automatic appeal in all cases in which the death sentence is imposed. See 1955 Cum. Pocket Part, Vol. 4, Code 1940, Title 15, § 382(1) et seq.

Lee was represented by counsel of his choice at arraignment and on the trial below. After finding that Lee is an indigent person, without sufficient funds to pay for the services of an attorney to represent him on appeal, the trial court appointed the counsel who represented Lee in the court below to prosecute this appeal and they appear here in his behalf. Act 249, General Acts 1943, supra.

Upon arraignment Lee pleaded not guilty and not guilty by reason of insanity.

The law on insanity as a defense in a criminal case is well recognized. Neither abnormality nor subnormality precludes liability for crime where there exists sufficient mental capacity to entertain the requisite criminal intent. As excuse for the crime, the burden was on the defendant below to clearly prove to the reasonable satisfaction of the jury that he was so afflicted by disease of the brain when the offense was committed as to render him so insane that he did not know right from wrong with respect to the particular offense charged, or by reason of such mental disease he could not resist doing the wrong; the crime must have been the product solely of such diseased mental condition. Smarr v. State, 260 Ala. 30, 68 So.2d 6; Lakey v. State, 258 Ala. 116, 61 So.2d 117, and cases cited; Parsons v. State, 81 Ala. 577, 2 So. 854.

The only evidence offered in support of the defendant's plea of not guilty by reason of insanity was the statements made by several witnesses to the effect that in their opinion the defendant was not a normal person. On this issue the evidence for the State tended to show that while the defendant had a high temper and had no formal education and was comparatively ignorant, he was not in any way mentally deranged.

We are clear to the conclusion that the issue of insanity as excuse for the crime was for the determination of the jury. This issue was decided adversely to the defendant and we think the verdict in that respect was well founded.

The defendant testified in his own behalf. He admitted that at about five o'clock on the afternoon of October 22, 1954, he killed James Arthur (Jack) Maddox, Jr., by shooting him with a 410-gauge shotgun while Maddox was sitting in his truck in front of the home in which the defendant and his two brothers resided. The defendant and his brothers were all unmarried. According to the defendant he left his home, situate in rural Etowah County, a short time before the arrival of the Maddox truck, which was driven by Maddox and in which the defendant's two brothers, J. P. and Tracey Lee, were riding. The defendant left the house carrying the shotgun in search of a fox which he said had been disturbing the chickens. As he was returning to the house he witnessed the arrival of the Maddox truck. Maddox operated a store not far distant from the defendant's home where he and his brothers customarily bought their supplies. It was customary for Maddox to deliver the supplies in his truck and for

the Lee brothers to ride home as the delivery was made. While his brothers were unloading the supplies, according to the defendant, he approached the truck in which Maddox was sitting. The defendant's gun was cocked. He told Maddox that the latter had ten minutes within which to pay the defendant $10 for work which the defendant had done on posts which Maddox had that day removed from the Lee premises. The defendant stated that Maddox replied that he did not have the money at that time and that as Maddox dropped his right hand from the steering wheel of the truck, the defendant fired the gun one time in the belief that Maddox was reaching for a gun which the defendant said he knew Maddox always carried.

The evidence for the State tends to show that there had been some bad feeling on the part of defendant toward Maddox for several weeks because of defendant's contention that Maddox owed him for work done on the posts. Maddox had understood that he had bought the posts from the defendant's brother, J. P. Lee, and had settled with him for the posts a week or two prior to the date of the shooting. The tendencies of the evidence offered by the State show that Maddox was unarmed and that he was shot by the defendant without provocation.

■ The foregoing is not a full statement of the evidence as it relates to the circumstances of the shooting, but we think it sufficient for the purpose of this appeal. We are clear to the conclusion that the evidence fully sustains the verdict of murder in the first degree.

■ Confessions made by the defendant were admitted without error. The predicate as laid by the State was in all respects sufficient to show prima facie that the extra-judicial confessions of the defendant were made voluntarily, there being nothing in the record to indicate that under the circumstances prevailing at the time they were made, when considered with the age, character and situation of appellant, he was deprived of his free choice to admit, to deny or to refuse to answer. Myhand v. State, 259 Ala. 415, 66 So.2d 544; Arrington v. State, 253 Ala. 178, 43 So.2d 644; Phillips v. State, 248 Ala. 510, 28 So.2d 542, and cases cited. The defendant, when examined as a witness, was asked no question tending to elicit from him any statement to the effect that the confessions which he had made to the officers shortly after the killing were not made of his own volition and without coercion of any kind, as the State's evidence tended to show.

■ The first witness for the State was the wife of the deceased. While she was being questioned as to the last time she saw her husband, the court reporter made the following notation in the record: "Witness sobbing." After that notation was entered, the witness was asked one further question, whereupon without any action on the part of counsel for the defendant, the trial court said: "Just one minute. Ask her if she wants to go outside and compose herself." Counsel for the State directed such a question to the witness and she replied, "I will go on." According to the record at this point the witness was "still crying." Counsel for the defendant at that point made no request of the court but the court of its own motion ordered a five-minute recess. Apparently while the court was in recess counsel for the defendant moved for a mistrial. This motion was not granted. When court was reconvened, the wife of deceased was brought back to the stand for a short interrogation and apparently she had regained her composure. We find no error to reverse in not granting a mistrial. Hanye v. State, 211 Ala. 555, 101 So. 108; Davis v. State, 222 Ala. 285, 131 So. 900. See Ingalls v. Holleman, 244 Ala. 188, 12 So.2d 751; Alabama Great Southern R. Co. v. McFarlin, 174 Ala. 637, 56 So. 989.

■ It was not error to permit witnesses to testify that the photographs

shown to them truly depicted the scene of the crime at the time of its commission, although such testimony was elicited prior to the time the photographs were admitted in evidence, inasmuch as the photographs were not seen by the jury at that time and were later introduced in evidence after proper preliminary proof. Smarr v. State, 260 Ala. 30, 68 So.2d 6.

■ There is no requirement of law that the description of wounds on the body of a deceased person must be given by expert witnesses, hence, the trial court did not err in permitting the coroner to testify as to the appearance and location of the wounds on the deceased prior to the time counsel for the defendant admitted the coroner's qualifications to testify as an expert. Phillips v. State, 248 Ala. 510, 28 So.2d 542, and cases cited. In view of the admission by counsel for the defendant of the coroner's qualifications, the trial court did not err in permitting the coroner to express his opinion as to the cause of death. Phillips v. State, supra.

■ the course of the direct examination of a prosecution witness, J. P. Lee, a brother of the defendant, the following transpired:

"Q. Well, had you and your brother had any trouble? A. No, sir. He meant to get me and Jack both. . -

"Mr. Roberts [one of defendant's counsel]. We ask the Court to exclude that.

"The Court. Yes, what he meant to do is out, that is not evidence, gentlemen, just disregard it.

"Mr. Roberts. Now we ask for a mistrial.

"The Court. No, I will overrule it.

"Mr. Roberts. We except."

The answer of the witness was not responsive to the question and the trial court acted correctly in admonishing the jury to disregard the answer, but we think the motion for mistrial was properly overruled.

■ It was not error to admit in evidence the shotgun which the defendant admitted was the one used by him in the slaying. Pilley v. State, 247 Ala. 523, 25 So.2d 57. Nor was there error in admitting in evidence the empty shell found at the scene of the crime and which was properly identified. Eldridge v. State, 247 Ala. 153, 22 So.2d 713.

■ The court did not err in declining to allow a witness for the defendant to testify as to the degree of intelligence possessed by the defendant. Witness was not shown to be qualified to give an opinion upon that question. Green v. State, 168 Ala. 90, 53 So. 286.

The record does not show that any objection was made to the argument of counsel for the State nor is the argument of counsel for the State set out in the record. However, the record does show that after the jury had been considering the case for some time they returned to the court room, where the following occurred:

"The Court: Gentlemen, I understand you have same questions you would like to ask the Court.

"Juror: Yes, sir. We would like a re-statement or clarification of a statement: If you make his sentence to life imprisonment, if he is eligible for pardon or parole at any time?

"The Court: Gentlemen, there was some argument to the jury, on that question. There was no evidence before you, on that question, at all. I can answer that question by saying that he will become eligible for parole. I don't know what—or any definite period of time it is. I believe—Mr. Wright and Mr. Orme, step up here just a minute. (Thereupon there was a side-bar conference between the Court and Counsel for the State and the Defendant)

"The Court: Gentlemen, whether or not a man becomes eligible for pardon or parole is a matter that really does not address itself to your judgment. That is, after this has been done, it should not have any bearing on the number of years, or whether or not you find him guilty of first or second degree, and so, really, I can't answer that question for you, because that is something that is beyond your province, and that brings into operation another branch of Government, and, of course, whether it is exercised is—

"Juror: Judge, could I ask the Solicitor to restate the sentence that he made in his charge to the jury?

"The Court: He made an argument to the jury. Let me see if I can answer your question. I can say this, gentlemen, that anything the Solicitor says, or that the attorney for the Defendant says in argument, is not evidence. That is merely—the evidence comes from the witness stand, and what the lawyer recalls the evidence to be, or how he is arguing to you his idea of it, is really to help you, maybe bring to mind, or to stress certain points of evidence, or inferences as they see them, but they can't testify. So, really, what you should address your concern to is the evidence that came from the witness stand, and not what one of the lawyers says. Now, if there was some point of evidence that was related maybe we can help you with it. I don't believe—well, is that what you wanted?

"Juror: Well, Mr. Wright said a man sentenced to ten-or twenty or thirty years, or to life, became eligible for parole in ten years. That's the disturbing statement.

"The Court: All right, gentlemen, forget that he becomes eligible for parole, because that is no concern of yours. The thing for you to do is to find him guilty, or not guilty, under the Court's charge, and give him the number of years you wish. And the question of parole addresses itself to the Pardon & Parole Board. I don't mean to cut you off, but does that answer it?

"Juror: Yes, sir, that answers it.

"The Court: All right."

■ There is no question but that the argument of the solicitor to the effect that a man sentenced to the penitentiary will at some time become eligible for pardon or parole was improper. But as before indicated, when that argument was made counsel for the defendant interposed no objection and the provisions of the automatic appeal statute, *supra,* have no application. Jackson v. State, 260 Ala. 641, 71 So.2d 825; Washington v. State, 259 Ala. 104, 65 So.2d 704.

The remarks of the solicitor were of the class of improper argument which may be remedied or their evil effect eradicated by instructions of the court. Oliver v. State, 232 Ala. 5, 166 So. 615; Pilley v. State, 247 Ala. 523, 25 So.2d 57; Wise v. State, 251 Ala. 660, 38 So.2d 553.

As shown above, the trial court strongly instructed the jury that they should decide the case on the evidence presented to them and should not be concerned with any future action which might be taken by a parole board. Apparently counsel for the defendant was satisfied with the admonition given by the trial court to the jury, for there was no request made for further instructions nor was an effort made to have the case taken from the jury. Under the circumstances which prevail here, we do not feel that we would be justified in reversing the judgment of the trial court because of the improper argument made by the solicitor to which no objection was made.

■ Refused Charges 3 and 4 each concluded to an acquittal upon an hypothesis that justified that result without a due consideration by the jury of all the evidence. Even if otherwise correct, they were well

refused on that ground. Reeder v. State, 210 Ala. 114, 97 So. 73; Coats v. State, 253 Ala. 290, 45 So.2d 35.

 As is our duty, we have carefully examined the entire record to see if there was any error prejudicial to the appellant, even though not called to our attention in brief of counsel. We find no such error.

It is our conclusion that the verdict and judgment of the lower court must be upheld.

Affirmed.

All the Justices concur.