255 So.2d 52

Glenn **DOLVIN**

v.

**STATE.**

8 Div. 131.

Court of Criminal Appeals of Alabama.

Oct. 5, 1971.

Rehearing Denied Nov. 2, 1971.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

CATES, Judge.

Indictment for grand larceny and in Count II for receiving, etc., the same property, a 1955 Buick valued at $250.00. The jury gave a general verdict of guilty and the court, after adjudging defendant "guilty as charged" and after allocutus, sentenced him to ten years in the penitentiary.

J. N. Powell, Jr., James Francis, Decatur, for appellant.

I

The car belonged to one Ray Lovett who was not available at the trial. His wife was allowed to sit with the District Attorney over defense objection.

The record (p. 17) shows the following:

"MR. POWELL: [W]e object—The Defendant objects ot Mrs. Lovett being out from under the rule in this case and we think it's prejudicial in her case and it is prejudice and we enter an objection and ask her not to be left out from under the rule.

"THE COURT: I understand that the prosecuting witness, the owner of the automobile, is not present, is that right?

"MR. NELSON: That's correct.

"THE COURT: Since he is not present, I will permit someone representing him to remain out from under the rule unless something occurs which would be— Would tend to be prejudicial to the jury and if something occurs in the mean time pending the trial which would make it prejudicial, then, we would change the rule.

"MR. POWELL: Are you overruling the motion?

"THE COURT: Yes, I overrule the motion."

■ We are asked to find error because of an alleged good ground for a motion for new trial, viz.,

"9. The Court erred in permitting Mrs. Lovett, who was the wife of a missing witness, to sit at the table with the prosecuting attorney in an anguished, weeping and emotional state, during the process of the trial."

Other than the motion for new trial, our attention has been called to no other instance wherein the court below was asked to restrain Mrs. Lovett's claimed lachrymosity.

We hold that if defendant thought Mrs. Lovett's weeping was prejudicial he should have promptly called the court's attention to it for remedy rather than allowing it to continue unabated (as his brief admits).

In Hanye v. State, 211 Ala. 555, 101 So. 108, where the deceased's widow staged a weeping demonstration, Gardner, J., wrote:

"Upon the attention of the court being directed to this occurrence the trial judge immediately ordered the sheriff to escort the widow from the courtroom. There was no further or other request made of the trial judge. The widow of the deceased was only a witness and an interested spectator. All that occurred took place in the presence of the defendant and his counsel. There was no request for a delay or postponement of the trial or discharge of the jury, or that the court should give any instructions admonishing them against permitting themselves to be affected by any such demonstration. Having full knowledge and remaining silent, we are of the opinion the general rule applies to the defendant to the effect that he would have no right to thus speculate on the chance of a favorable verdict, and afterwards complain thereof as error on motion for a new trial. * * *

"Moreover, we do not entertain the view that such demonstration was of so highly a prejudicial character as to be incapable of eradicating the effect thereof from the mind of the jury by proper admonition and instructions from the trial court. * * *."

We hold that no point was timely reserved in the trial below so as to bring the matter for review on appeal.

II

■ The second point argued was preserved below for our ruling by way of a motion to exclude the State's evidence made immediately after the prosecution rested. Defense counsel assigned insufficient evidence to put the defendant "at the scene of the crime." The motion was overruled.

Officer Cook pursued someone driving through a shopping center in a 1955 Buick, later shown to have been Lovett's stolen car. The chase turned to one on foot after the Buick ran up on a sidewalk in the shopping center.

Cook testified in part:

"Q All right, sir, how many people could you see in the car that you chased down 6th Avenue where he ran up on the side walk at Gateway Shopping Center?

"A One.

"Q  Did you have your head lights on at that time?

"A  Yes, sir, I did.

"Q  Bill, just tell the jury, and in case some of them are not familar [sic] with 6th Avenue, is it a dark street or well lighted or just describe the conditions down there that night when you were chasing him?

"A  6th Avenue is well lighted. It was a well lighted street.

"Q  Could you see the other man in the automobile you were chasing?

"A  Yes, sir, I could.

"Q  Is it the same man—What did he do after he ran up on the sidewalk?

"A  I was approximately a hundred foot behind him when he hit the sidewalk and went on it. He jumped out of the car. By the time I got down to where he was at, he was running down through the breezeway and had made it down almost to the entrance of the theatre.

"Q  All right, sir, Bill, let me ask you this. Could you recognize, by sight, the man you saw, you chased—You saw in the Decatur Shopping Center and you chased down 6th Avenue and saw jump out of this car? Can you identify him by sight?

"A  Up until this time?

"Q  Yes, sir.

"A  No, sir.

"Q  You mean—Well, did you see this man get out of the car and—

"A  Yes, I saw him when he jumped out of the car and ran down the breezeway.

"Q  Did you identify him at that time?

"A  I didn't see his face.

"Q  You see the rear?

"A  Yes, sir.

"Q  You recall how he was dressed or what he looked like or was this happening too fast?

"A  The only thing I remember him having on was a blue windbreaker or jacket.

"Q  All right, what did you do after you saw this man taking off down through the breezeway toward the theatre?

"A  I turned and went south in my car, went down to the Quick Chek Food Market. There is a road going between Sears and Quick Chek, it goes—It leads around to the back of the stores and I turned and went down that street and went behind the stores. I got back down to almost within fifty foot of the Gateway Threatre [sic] and the man was running towards me.

"Q  How was this man running towards you dressed?

"A  He had a blue jacket on.

"Q  Dressed just like the fellow you saw running down the breezeway?

"A  Yes, sir.

"Q  Did you arrest this man, grab him, chase him, or what did you do?

"A  I stopped him from running and put his hands up on the car and searched him and placed him under arrest.

"Q  In your judgment, is this the same man you were chasing down the 6th Avenue and running in the breezeway?

"A  Yes, sir, it is."

Another witness saw a man running from the direction of the stalled Buick. This witness ran after the fugitive through the arcade and down a side alleyway to the point in the rear of the theatre where Cook arrested Dolvin. The witness identified the captive as Dolvin. The theatre manager also was a witness to most of the same flight.

We consider that the evidence was sufficient to send the case to the jury and to support their verdict.

The judgment below is due to be

Affirmed.