(92 South. 97)

### WADE v. STATE.   (6 Div. 858.)

(Court of Appeals of Alabama.   June 30, 1921. Rehearing Denied Dec. 20, 1921.)

**1. Criminal law ⟨key⟩696(7)—Motion to strike properly denied where part of the answer was competent.**

It was not error to deny a motion to strike the entire answer of a witness where a part of the answer was competent as tending to contradict the testimony of defendant's wife.

**2. Criminal law ⟨key⟩1037(1, 2)—Objection to argument of solicitor and request for correction necessary for review.**

Objection to the argument of the solicitor does not require reversal where no objection was made to the argument and no appeal for corrective action presented to the trial court, since parties cannot speculate on the result of the case, and then complain of matters that might be corrected during the progress of the trial.

**3. Criminal law ⟨key⟩50—Irresistible impulse is not "insanity."**

While insanity is recognized as complete defense to crime, it must be real insanity, a mental disease as distinguished from some emotion or passion that the party gives way to, and an irresistible impulse generated by wicked propensities will not excuse the violation of the law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insane—Insanity.]

**4. Criminal law ⟨key⟩331—Extent of burden on defendant to prove insanity stated.**

When a defendant invokes the defense of insanity, the burden is placed on him by law reasonably to satisfy the jury from the evidence: First that he was afflicted with a real mental disease to such an extent as to be either idiotic or otherwise insane; next, that either he did not know right from wrong as applied to the particular act in question, or that the mental disease had destroyed his power to choose between right and wrong; and, last, that the crime was solely the product of the mental disease.

**5. Criminal law ⟨key⟩1208(9) — Minimum sentence one year less than maximum is not invalid.**

A judgment imposing upon one convicted of mayhem a minimum sentence of 19 years and a maximum of 20 years is authorized by Acts 1919, p. 148, which does not prohibit the court in a proper case from fixing the minimum sentence a short time less than the maximum fixed by law if the evidence warrants it.

**6. Criminal law ⟨key⟩1083—Court has no jurisdiction over motion for a new trial after appeal.**

After judgment has been rendered and sentence imposed, and an appeal has been taken to the Court of Appeals, the lower court has no jurisdiction to pass upon a motion for a new trial.

Appeal from Circuit Court, Jefferson County; William E. Fort, Judge.

Charley Wade was convicted of mayhem, and he appealed. Reversed and remanded, in accordance with the mandates of the Supreme Court, in 207 Ala. 1, 92 South. 101; 207 Ala. 241, 92 South. 104.

Beddow & Oberdorfer, Roderick Beddow, and Ben F. Ray, all of Birmingham, for appellant.

Prisoner was denied a public trial, as defined by section 6 of the Constitution of 1901. Rule 47, Fed. 394; 89 Mich. 276, 50 N. W. 995, 28 Am. St. Rep. 302; 103 Cal. 342, 37 Pac. 406; 75 Ohio St. 255, 79 N. E. 462, 9 L. R. A. (N. S) 277, 116 Am. St. Rep. 734, 9 Ann. Cas. 108; 8 R. C. L. 76; 52 Mont. 205, 156 Pac. 1080, L. R. A. 1916E, 472, Ann. Cas. 1917E, 619; 54 Or. 289, 103 Pac. 62, 20 Ann. Cas. 627; 68 Minn. 381, 71 N. W. 401, 38 L. R. A. 672, 64 Am. St. Rep. 482. The defendant need not have objected, and is not required to show injury. 75 Ohio St. 255, 79 N. E. 462, 9 L. R. A. (N. S.) 277, 116 Am. St. Rep. 734, 9 Ann. Cas. 108; 47 Ala. 659, and authorities supra. Section 169 of the Constitution does not authorize the proceedings in this case. 6 R. C. L. 48, 49; 12 C. J. 699; 154 Ala. 249, 46 South. 268; 12 Wheat. 419, 6 L. Ed. 678; 145 Ala. 385, 40 South. 293; 71 Ala. 73; 19 How. 393, 15 L. Ed. 691; 149 Ky. 847, 150 S. W. 14. Section 1409 of the Code of 1901 is unconstitutional, if it is to be applied to criminal cases. 6 R. C. L. 40; 71 N. W. 491; 5 Ga. App. 59, 62 S. E. 651; 8 R. C. L. 76. The court had no power to exclude the public. 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; 205 Ala. 386, 87 South. 375; Block v. Hirsh, 256 U. S. 135, 41 Sup. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165. There is no such thing as an implied waiver. Authorities supra.

Harwell G. Davis, Atty. Gen., for the State.

The Court of Appeals found as a fact that defendant had waived a public trial, and

this court will not review that finding. 195 Ala. 420, 71 South. 91; 184 Ala. 9, 63 South. 990; 181 Ala. 4, 61 South. 53. The motion for new trial was filed after the appeal was taken, and could not raise or present questions not raised in the trial court. 105 Ala. 200, 16 South. 693; 203 Ala. 205, 82 South. 455. A defendant may waive his right to a public trial. 16 C. J. 808; 8 R. C. L. 77; 146 Ala. 149, 41 South. 301; 33 Ala. 354; 45 Ala. 21; 193 Ala. 69, 69 South. 10.

BRICKEN, P. J. This defendant was convicted of the crime of mayhem; he castrated a fellow man. He was sentenced to serve not less than 19 and not more than 20 years in the penitentiary. In addition to a plea of not guilty, he interposed a plea of not guilty by reason of insanity, claiming that his mental equilibrium had been disturbed by alleged illicit relations between his victim and defendant's wife.

It was obvious at the beginning of the trial that all these sordid matters would be aired throughout the trial. After the jury was selected, the general public were excluded from the courtroom. Relatives of the parties concerned, officers of the court, and attorneys were permitted to remain. The appellant made no complaint against such action on the part of the trial court at the time. He did not reserve an exception to such order, but for the first time he urges in this court that his constitutional right of a public trial was infringed.

Appellant contends that the maxim expressio unius 'est exclusio alterius should apply to section 169 of the Constitution of 1901; that it should be construed as prohibiting the exclusion of any part of the general public from any trial except in prosecutions for rape and assault with intent to ravish; that section 4019 of the Code of 1907 has no application to criminal cases, because it appears in the Civil Code, and that, if it is construed as applying to criminal cases, it is violative of the constitutional right of a public trial.

One purpose of a public trial, and one of the things our forefathers had in mind in guaranteeing a public trial, was to avoid "star chamber" proceedings that became notoriously infamous during the reign of certain English kings. In such cases the accused was rarely allowed counsel. No court reporter was present to record, under his official oath, every word uttered by the court, counsel, and witnesses. The lack of these and many other advantages that are now afforded one accused of crime probably accounts for the rigidity of construction this provision received by courts in the early days, as appear from some of the decisions cited in appellant's brief.

Under the common law as it was administered in ancient times in the courts of England, there was at times some real reason to fear the conviction of an innocent man. An accusation by the officers of the law was then almost tantamount to a conviction—a condition practically impossible to-day under our present state of enlightened public opinion. Our forefathers brought this idea of safeguard to the innocent across the water with them, and, in furtherance of that idea, hedged the administration of the criminal law about with various restrictions, many of which have long since outlived their usefulness. Rules that were sound and very probably necessary in the age that, gave them birth, but which are now obsolete, have been perpetuated by courts and seized upon by zealous advocates, intent upon bringing about the acquittal of a client in a hard case, until their purpose and mission have sometimes been lost sight of; finical reasoning has in some instances distorted great principles, until they are no longer looked upon by many as a shield to the innocent, but as a barrier to protect the guilty. As a result, society is being made the prey of a constantly increasing criminal element—constantly increasing because courts and lawyers are at times prone to live in an age several generations behind the times; to solve and adjudicate modern problems and cases looking through glasses that have become murky with the cobwebs of time. The question now seems to be not so much the protection of the innocent as it is the ability of the court to finally punish the guilty. If we ever reach the point where it will be cheaper to be criminal than otherwise, it will be because of the reluctance of courts and lawyers to abandon antiquated precedent, developed in an age and under conditions entirely different from the present, and their failure to cut loose from some rules that cannot affect the merits of a modern trial.

We do not intend to intimate by anything we have said that the court has any idea of striking down a constitutional right of a defendant in a criminal case, but we do mean to say that society as a whole has some rights, and that the rights of the defendant must be considered with due regard to the rights of the state. We must not concentrate so intently on the rights of the accused as to lose sight of the right of society to protect itself against its criminal element; the court must not be converted into an agency for the liberation of the guilty rather than an organization for the protection of the innocent. In every criminal case the state is entitled to a fair trial, a patient consideration of its case, and a square deal— just as much and to the same extent as the defendant in the case. Society has the right, and it is its duty, to protect itself against the filthy, sordid details of a trial involving infidelity on the part of a wife, castration of her alleged paramour, and insanity on the part of the husband. The police power of the state is broad enough to sustain section

4019 of the Code, and the defendant's constitutional right of a public trial does not give him the right to pollute the mind of the entire community with the details of his real or imaginary grievances. In a trial of this character, where the accused, his attorneys, his witnesses, officers of the court, and members of the bar are admitted, it is sufficiently public to satisfy the constitutional guaranty. The appellant's insistence that his constitutional right was infringed is without merit. Clemons v. State, 17 Ala. App. 533, 86 South. 177; Ex parte Clemmons, 204 Ala. 697, 86 South. 926; 12 Cyc. 520.

[1] The exceptions reserved to the ruling of the court upon the evidence are without merit. No error is shown in any of these rulings. A part of the answer of witness Propst tended to contradict the testimony of the defendant's wife. If the remainder of the answer was objectionable, it should have been separated from that which was admissible. The motion to exclude was directed at the entire answer.

[2] The alleged argument of the solicitor is not before us except as a ground in the motion for a new trial that was presented after judgment had been passed, sentence imposed, and an appeal to this court. The trial court had no jurisdiction to pass on such motion. Moreover it does not appear that any objection was made to such argument, and no appeal for corrective action was made to the trial court. Parties cannot speculate on the result of a case and complain of matters that might have been corrected during the progress of the trial.

The defendant requested several charges, most of them dealing with some phase of the law of insanity; some were given and some refused. The law on insanity in criminal cases was so thoroughly discussed in the memorable Parson's Case, 81 Ala. 577, 2 South. 854, that it has been deemed settled in this state ever since that case was decided. There is no necessity for attempting to add anything to that case, and any discussion of the subject must be in a way of restatement of the principles and rules there laid down for the guidance of trial courts. In this age when insanity seems to be a popular defense in a desperate case, it may not be out of place to reiterate some of the requirements of law in cases where that defense is interposed. While insanity is recognized as a complete defense to crime, the law requires that it should be real insanity, a mental disease, as distinguished from some emotion worked up for the particular occasion, or some passion that the party gives way to.

[3] The defense of insanity in this case, to say the least of it, appears to be a crude quality of camouflage. The evidence in support of it is barely sufficient to authorize the submission of that question to the jury. Trial courts cannot be too careful in seeing to it that this humane defense permitted by law is not prostituted and used as a cloak to shield a criminal in distress. Juries should not be misled by references to irresistible impulses. They may well look with suspicion on nonexpert opinions given by close relatives and well wishing friends that claim to have observed mental peculiarities for some period of time prior to the commission of the crime, but who have not taken any steps towards having the defendant detained or restored through the intervention of scientific treatment. A man sufficiently unbalanced to be excused from the penalty for crime is sufficiently unbalanced to be the object of solicitous care on the part of intimate friends and relatives as a general rule.

An irresistible impulse generated by wicked propensities will not excuse the violation of law. Depravity is not a disease. High temper, hot blood, and passion are not such mental ailments as will excuse the commission of crime. The so-called emotional insanity is not recognized as a defense in a criminal case.

[4] When a defendant invokes the defense of insanity under the law of Alabama, the burden is placed on him by law to reasonably satisfy the jury from the evidence, first of all, that, at the time the crime was committed, he was as a matter of fact actually afflicted with a real disease of the mind, and to such an extent as to be either idiotic or otherwise insane. If the evidence does not show that the defendant was actually suffering from and afflicted with a disease of the mind at the time the crime is alleged to have been committed, his plea of insanity cannot be sustained, and it should receive no further consideration at the hands of the jury. If the existence of a mental disease, however, is shown, so as to render the defendant insane, the next question is: Did he know right from wrong as applied to the particular act in question? If he did have such knowledge, had the mental disease destroyed his power to choose between the right and wrong, and destroyed his free agency, so that he was incapable of avoiding the commission of the act in question? And was the crime solely the product of such mental disease? Not every one afflicted with some type of mental trouble is irresponsible under the law. If for instance, one is afflicted with some type of mental disease that does not destroy the power of discrimination and that trouble concurs with a base appetite or aroused passion in causing the commission of crime, the defendant in such case is as guilty under the law as if he had never suffered from any mental disorder. Mere eccentricities and peculiarities are not sufficient to show the existence of a diseased mind and a state of insanity sufficient to excuse infraction of the law. Not every man is insane that gets wrought up over some real or imaginary domestic trouble.

All of the charges refused to defendant are either in conflict with the principles announced above and the many Alabama cases dealing with the law of insanity, or they were covered by the charges given at the defendant's request or the oral charge of the court; some of them were argumentative, and, under the evidence in the case, were properly refused. No good purpose could be served by treating each charge separately.

[5] The sentence of not less than 19 and not more than 20 years is authorized by Acts 1919, p. 148. There is nothing in that act prohibiting the court in a proper case from fixing the minimum sentence a short time less than the maximum fixed by law if the evidence warrants it. It is unnecessary to pass on the question of the defendant being deprived of any credit allowed by law for good behavior. We must assume that he will be given everything the law says he is entitled to.

[6] The motion for a new trial was made after judgment, sentence, and an appeal to this court had been announced. The lower court had no jurisdiction to pass on it.

The appeal in this case is not taken in accordance with the provisions of new rule 43, requiring the filing of a notice of appeal. The safer practice is to comply with the rule.

The judgment of the circuit court is affirmed.

Affirmed.

### Response to Opinion of Supreme Court.

On our former consideration of this case we assumed that the record before us showed that the defendant was deprived of a public trial in the court below, and that this alleged action of the court was presented here for review. Acting on that assumption, we ruled, owing to the nature of the evidence in the case, that this alleged exclusion of the public was justifiable, on the theory that a court engaged in the administration of justice is necessarily engaged in moral conservation of the highest order, and is under no duty to become a center of moral infection, or obligation to gratify the morbid appetite of the salacious minded part of the public, in order to make a trial literally "public."

On review by the Supreme Court, that tribunal disagreed with our conclusion in reference to a public trial, and held in substance that the constitutional guaranty of a public trial rendered the trial court powerless to protect the general public from the disgusting obscenity and linguistic filth necessarily incident to a case of this character. 92 South. 101.[1] That ruling is binding on this court, and we accept it with the greatest deference and respect.

It is obvious, however, that in each of the rulings above referred to each court assumed, without so finding, that the record before it presented the question ruled on. In doing so we probably accepted the statement of counsel in their brief to that effect, which no doubt was made in the utmost good faith, but which was inaccurate as we shall presently show.

Mindful of the admonition that the primary function of an appellate court is "the correction of errors—its own, as well as those of others"—we have re-examined this record with care, and find that on this question the record shows as follows:

After the jury was organized, and in the presence of the jury, before the taking of testimony began, the court made the following statement:

"Now the nature of this case is such, as I understand, that the court is called upon to exercise its discretion about parties remaining in the courtroom during the evidence, and the court believes that it will be best for the public interest to exclude all parties except relatives of those concerned, the attorneys, and officers of the court. Therefore I will have to require all parties be excluded from the courtroom during the taking of the testimony in this case except those who are related, those who are officers of the court, either as attorneys or officers whose duty it may be to come in during the course of the trial."

No exception was reserved to this statement of the court. Woodson v. State, 170 Ala. 87, 54 South. 191; Bean v. State, 91 South. 499.[2] Immediately thereafter the witness Annie Brown was called to the stand, and the state proceeded with the introduction of the evidence in the case.

This is all the evidence in this record that has any bearing upon whether the trial below was a public trial or not. Is it sufficient to show that the trial was not in fact a public trial? In the absence of a satisfactory showing to the contrary, the law presumes the regularity of proceedings in a court of record. There is, therefore, a presumption of law, that the defendant was given a public trial by the court below.

If a bill of exceptions will admit of two constructions, one of which will reverse and the other sustain the judgment of the lower court, the latter construction will be adopted. Brickell, C. J., in McGehee v. State, 52 Ala. 224. By the record before us we are informed that the court below made a statement; that statement is set out, we assume, in hæc verba in the bill of exceptions; it does not amount to an order, and the record does not show that the court made nay such order as we assumed it made.

The bill of exceptions has all the earmarks of having been prepared by one learned in the law, skilled in the use of language, and accustomed to the niceties of expression employed in conveying an intention to a discriminating mind. If the court made an order excluding the public, instead of a mere statement of what he thought would be best,

---

[1] 207 Ala. 1.

[2] Ante, p. 281.

that important fact should have been stated, and the appellate court not left to ascertain it by inference, suggestion, or suspicion, or a resort to rules of construction.

We are confirmed in our opinion that the record does not show any order excluding the public by the absence of anything in the record to show an enforcement of the alleged order. There is not a hint in the record that the court actually ordered any person from the courtroom, or that the court forbade any person entrance thereto. There is not a suggestion that the court ordered the sheriff or any other court attaché to clear the courtroom of the general public, or to refuse to admit any one that sought admittance. We cannot find an intimation in this record, that any spectator—if there were any, the record being silent on this point—left the courtroom, or that any spectator even heard the remark of the trial court, or that any member of the public acted thereon or was influenced thereby in any way. There is no showing that the statement of the trial judge was in any way communicated to the public outside the courtroom, or that any person contemplating admission to the courtroom failed to obtain it by reason of these remarks by the trial judge. In short, the record does not show that any one left or was kept away from the trial by this remark, and, for aught appearing, the trial was just as public as if the remark had never been made. In addition to that, the inference is strong that not a soul stirred, for immediately after the court concluded its statement, according to the record, Annie Brown was called to the stand as a witness, and the trial proceeded.

It is a matter of common knowledge that ordinarily a trial does not proceed while a courtroom is being cleared of the public. The general arrangement of things, and the general behavior of an audience making its exit, are not, as a usual thing, conducive to that quiet and decorum essential to an orderly reception of evidence. If, following the statement of the court above set out, this record contained a recital to the effect that "here the court excluded the general public from the courtroom and kept it excluded therefrom during the trial of this case," we would have something definite before us. As it is, we can surmise, suspicion, and speculate on what happened, but the record does not show what happened. "The sea of suspicion has no shore, and the court that embarks upon it is without rudder or compass." Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451, and, in absence of a clear and satisfactory showing to the contrary, the presumption indulged in favor of the regularity of proceedings in courts of record must prevail.

In East Pratt Coal Co. v. Jones, 16 Ala. App. 130, 75 South. 722, certiorari denied by Supreme Court, 200 Ala. 697, 76 South. 995,

we reviewed the authorities in this state upon a similar question. There is no necessity for restating here what was thoroughly discussed there. For these reasons, and others that might be suggested, under the well-established rules recognized in Jones Case, supra, we hold that the record in this case fails to show that the trial in the court below was not a public trial, and consequently the discussion by this court and the Supreme Court of that part of the case, was what has been courteously termed dictum. Woodson Case, 170 Ala. 87, 54 South. 191.

We have not overlooked the alleged motion for a new trial. This motion was filed after the appeal had been taken, and the trial court had been divested of all jurisdiction. Hudson v. Bauer Grocery Co., 105 Ala. 200, 16 South. 693. The affidavit accompanying the motion could not be considered by the trial court or by this court for any purpose. National Pyrites & Copper v. Williams, 206 Ala. 4, 89 South. 291.

Having found as a fact that the record does not show that the appellant was deprived of a public trial, it follows the discussion by counsel of that proposition is without merit. All other questions having been treated in our former opinion, and no error appearing, we conclude that the judgment of the trial court should be affirmed.

Affirmed.

Reversed and remanded, March 7, 1922, under mandate of Supreme Court in case of Charley Wade v. State, 207 Ala. 1, 92 South. 101.