28 So.2d 542

### PHILLIPS v. STATE.

7 Div. 864.

Supreme Court of Alabama.

Oct. 10, 1946.

Rehearing Denied Jan. 16, 1947.

Roberts, Cunningham & Hawkins, of Gadsden, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

514

The three counts of the indictment charged appellant, a member of the Negro race, with the first-degree murder of Henry Louie, a Chinese, who operated a laundry in the City of Gadsden, Alabama. The counts of the indictment are identical except as hereinafter shown. The first count charges that appellant killed. Louie "by striking him over the head with a machinist hammer." The second count charges that the .crime was committed "by striking him three times on the head with a machinist steel hammer," while the third count charged "by striking him three times on the head with a heavy metal hammer."

Upon arraignment appellant pleaded not guilty and not guilty by reason of insanity.

■ There was no ground for quashal of the venire, arising from the fact that the name "James B. Pruitt" was on the venire served on the defendant, whereas "Joseph B. Pruitt" was the person who appeared for service on the trial of the defendant. It was shown that the person drawn for jury duty lived at 311 Henderson Street, Beat 29, Etowah County. That was the place of residence of the person who was summoned and who appeared for service. There was no one by the name of "James B. Pruitt" who lived at that address. The trial court correctly overruled the motion to quash the venire. § 37, Title 30, Code of 1940; Savage v. State, 174 Ala. 94, 57 So. 469; Zininam v. State, 186 Ala. 9, 65 So. 56.

On Thursday, April 26, 1945, around 7:20 p. m., a police officer of the City of Gadsden discovered the body of Henry Louie in a building on Broad Street, wherein the deceased had operated his laundry. The body was found in a small room of the building between a commode and the wall. Louie had evidently been dead only a short time, as his body was still warm when discovered. He was dressed in work trousers and a shirt, both of which were bloody. His pockets were turned "wrong side out" with the exception of the left front pocket of his trousers, in which the officers found approximately $50. The belt on his trousers was unfastened and his trousers were hanging down. There was human excrement in the unflushed

LAWSON, Justice.

Lawrence N. Phillips was convicted of murder in the first degree and sentenced to death by electrocution. He has appealed to this court under the provisions of Act No. 249, approved June 24, 1943, General Acts 1943, page 217, Code 1940, Tit. 15, § 382(1) et seq., which act provides for .an automatic appeal from the trial court in all cases in which the death sentence is imposed.

toilet bowl. There were three "holes" in the back of his head. The skull was crushed in one place. Blood was on the floor of the small room where the body was found and there were small drops of blood leading from this small room into another room located approximately in the middle of the building and referred to in the testimony as the "drying room." A considerable amount of blood was found on the floor of the drying room and on clothes (laundry) therein.

The evidence for the State tends to show that appellant went to the laundry operated by deceased at about 5 o'clock on the afternoon that Louie met his death. Annie Bell Phillips, wife of appellant, was an employee of deceased and was at the laundry at the time appellant entered the building through the back door. Shortly after entering appellant picked up a hammer. Deceased was in the "drying room" with his back to the door, but saw appellant as he entered the door to that room. A struggle ensued wherein appellant hit the deceased three times "over the head with the round end of the hammer." Deceased fell on his face and appellant removed some money from the right front trousers pocket of deceased. Appellant left the building through the rear door. He met his wife just outside the building. They left together and later counted the money which had been taken from the deceased, which amounted to $85.60. Appellant gave $50 of the money to his wife. They proceeded to a pasture where the hammer was thrown into a branch or creek.

Appellant denies that he either hit or robbed deceased. However, he admits that he was at the laundry on the afternoon of the homicide. According to appellant he had heard many times that the deceased was engaging in acts of sexual intercourse with appellant's wife, Annie Bell; that as he was walking into the back door of the laundry he saw deceased and Annie Bell partially undressed, embracing in deceased's bedroom; that deceased saw appellant and started toward him; that appellant does not remember the events subsequent thereto, he "just went crazy."

Annie Bell testified in behalf of her husband. She testified that she engaged in an act of sexual intercourse with the deceased late in the afternoon of the day he died; that deceased left the room where this act occurred and shortly thereafter she heard a noise which frightened her and she ran out the back door partially unclad, but returned, put on her clothes, and immediately went home; that she did not see appellant at the laundry nor did she investigate to determine the cause of the noise which had frightened her. She claimed that she had engaged in acts of sexual intercourse with deceased on numerous occasions extending over a long period of time. According to her testimony she had worked for deceased for many months prior to his death except for a short period when she was ill. However, appellant and another employee of deceased testified that she had never worked for deceased prior to three weeks before he met his death.

In support of his plea of not guilty by reason of insanity, several witnesses called by appellant testified that they had known him, had seen him frequently, observed him, and that in their opinion he was insane. Their testimony tended to show that appellant had a difficult time in school, talked to himself, refused to bathe himself, and had no inhibitions as to his state of dress before others; that he had never held a job for any length of time.

In rebuttal the State offered the testimony of several witnesses who testified that in their opinion appellant was sane.

█ There is no requirement of law that the description of wounds on the body of a deceased person must be given by an expert witness. Rowe v. State, 243 Ala. 618, 11 So.2d 749; Hill v. State, 146 Ala. 51, 41 So. 621; Pitts v. State, 140 Ala. 70, 37 So. 101. The trial court did not err in permitting the expert and non-expert witnesses to testify as to the appearance and location of the wounds. Kilpatrick v. State, 213 Ala. 358, 104 So. 656; Hill v. State, supra; Terry v. State, 118 Ala. 79, 23 So. 776; Evans v. State, 120 Ala. 269, 25 So. 175; Thomas v. State, 24 Ala. App. 425, 136 So. 419; Gunn v. State, 24 Ala.App. 494, 136 So. 870.

516

However, only an expert can express an opinion as to the fatality of a wound. Jones v. State, 155 Ala. 1, 46 So. 579; Rash v. State, 61 Ala. 89; Hicks v. State, 247 Ala. 439, 25 So.2d 139. Appellant insists that the trial court erred in permitting State witness Jesse Cox to testify over the objection of the appellant that in his opinion the wounds which he observed on the head of deceased were sufficient to result in death. Cox is an undertaker with twenty-five years experience in that field and he has served as coroner of Etowah County for over three years. The fact that the witness Cox was coroner of the county did not qualify him to express an opinion as to the cause of death. Nor is an undertaker, as such, an expert on the question as to the cause of death of a deceased. Anderson v. State, 19 Ala.App. 606, 99 So. 778; Daniel v. State, 31 Ala.App. 376, 17 So.2d 542.

But it is not necessary that a witness be shown to be a practicing physician before he can express an opinion as to the cause of death. The rule is stated in the recent case of Hicks v. State, supra [247 Ala. 439, 25 So.2d 140], as follows: "The nature of a wound or injury, its probable cause and effect can be stated by expert medical witnesses, or witnesses shown to be familiar with such question; such as, an undertaker, or others showing competency." In the Hicks case, supra, it was held that a registered nurse was shown to be qualified to express such an opinion, and in the case of Wilson v. State, 243 Ala. 1, 8 So.2d 422, it was held that an interne who had no license or certificate from any State Board was competent to testify as to the cause of death.

In view of the predicate laid for his testimony and the statement of his experience in observing and examining wounds and the effect thereof, similar to the wounds that he observed on the head of deceased, we are of the opinion that the witness Cox was shown to possess the requisite qualifications to give an opinion as to the fatality of the wounds upon the body of the deceased. The question as to whether a witness is shown to possess the requisite qualifications is a preliminary question said to be largely within the discretion of the trial court. Hicks v. State, supra; Wilson v. State, supra; DeSilvey·v. State, 245 Ala. 163, 16 So.2d 183. We are unwilling to hold in this case that the trial court abused its discretion in permitting this witness to express his opinion as to the cause of the death of Henry Louie.

State witness C. D. Brooks, who has been in the employ of the State of Alabama as a toxicologist for a period of eight years, also was permitted to testify that in his opinion the wounds which he observed on the head of the deceased were sufficient to have caused death. He was unquestionably shown to possess sufficient qualifications to testify as an expert in this regard. DeSilvey v. State, supra; Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, cert. denied, 243 Ala. 671, 11 So.2d 568.

Appellant contends that there was not sufficient proof of the corpus delicti to justify the admission in evidence of confessions alleged to have been made by him. Proof of death as a result of force unlawfully applied is sufficient as a predicate for the introduction of a confession voluntarily made. Before a confession may be admitted it is not incumbent upon the State to introduce evidence tending to identify the accused as the guilty agent applying the unlawful force causing death. Hall v. State, 247 Ala. 263, 24 So.2d 20; Johnson v. State, 247 Ala. 271, 24 So.2d 17; Vernon v. State, 239 Ala. 593, 196 So. 96; Jordan v. State, 225 Ala. 350, 142 So. 665; Shelton v. State, 217 Ala. 465, 117 So. 8.

Circumstantial evidence may afford satisfactory proof of the corpus delicti and if facts are presented from which the jury may reasonably infer the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the accused is thereby rendered admissible. Johnson v. State, supra; McDowell v. State, 238 Ala. 101, 189 So. 183; Hill v. State, 207 Ala. 444, 93 So. 460.

The death of Louie was not questioned. It was proved beyond peradventure. It was shown that when the body of deceased was found there were three "holes" in the head and in one place the skull was crushed. Blood was found on his clothing

and on the floor. A fair inference is that he was hit by some person. The witness Cox testified that the wounds on his head were sufficient to have caused death. The foregoing was shown by the State before the alleged confession was admitted in evidence. Therefore, the appellant's contention that there was not sufficient proof of the corpus delicti to permit introduction of the said confessions is without merit. Moreover, the evidence of C. D. Brooks as to the cause of death, though admitted after the confessions, would cure any error in the prior admission of the confessions. Floyd v. State, 82 Ala. 16, 2 So. 683.

The State proved that the appellant had admitted his guilt. As we understand the evidence for the State, appellant first admitted his guilt in an oral confession made to Chief of Police Boman, Captain of Detectives Fisher, and Detectives Dismukes and Gramling. We think the evidence shows that this confession was made sometime between midnight and 3 a. m. on the morning of May 2, 1945, in the office of Captain Fisher located in the city hall. The city hall adjoins the city jail where appellant was confined. The next confession consisted of a written statement which the State contends was signed by appellant after it was read to him by Chief Boman. His signature was witnessed by all of those above mentioned as having been present when he made his first oral confession and by Mr. Carl Periman, a special agent for the Federal Bureau of Investigation, who typed the alleged confession as it was related by appellant. Periman had not been present when the first oral confession was made, but came to the office of Captain Fisher at the request of Chief Boman. He arrived there at about 3 a. m. on the morning of May 2d. Approximately two hours were consumed in reducing the confession to writing. Appellant was returned to his cell in the city jail about daylight.

The next statement in the nature of a confession which the State contends was made by appellant was made in the morning of May 2d, shortly after appellant had finished his breakfast. This statement is alleged to have been made in a pasture to which place appellant had accompanied Chief Boman, Captain Fisher, Detective Dismukes and F.B.I. Agent Periman. On this trip the State contends that appellant pointed out the place where he threw the death instrument in the creek or branch; that two hammers were recovered at that point; that appellant identified one of the hammers as being the one with which he hit deceased.

Shortly before noon on the morning of May 2, 1945, the appellant and his wife, Annie Bell Phillips, accompanied Chief Boman, Captain Fisher and Mr. E. B. Calloway, a representative of a Gadsden newspaper, to the scene of the alleged crime. Before entering the building where the laundry had been operated by deceased, they were joined by Jim Williams, a Negro representative of the Booker T. Washington Insurance Company, who witnessed all that transpired. The State contends that at this time and place appellant again made statements wherein he admitted his guilt and that he demonstrated how he hit deceased and removed the money from his pockets.

It is urged that the trial court erred to a reversal in permitting the State to make proof of the alleged confessions on the ground that they were not shown to have been voluntarily made. The rule in this State as to the admissibility of confessions in evidence has been stated many times by this court and is well understood. Prima facie, a confession is not voluntary, and there must be evidence addressed to the trial judge rebutting that presumption and showing prima facie that the confession was voluntarily made, unless, of course, the circumstances attending the confession affirmatively disclose its character. Johnson v. State, 242 Ala. 278, 5 So.2d 632, certiorari denied, 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763.

Before the trial court would permit the introduction in evidence of any statement in the nature of a confession alleged to have been made by appellant, the State was required to account for the treatment accorded appellant from the time he was first in custody. Without question the State introduced evidence tending to show that no threat was ever made against appellant; that he was not physically mis-

treated; that he was not told that it would be better for him to make a confession or worse for him if he did not; that no reward was offered or held out to him to get him to confess; that no inducement of any kind was made to appellant; that he accompanied the officers to the pasture and to the laundry voluntarily.

We think the predicate as laid by the State was in all respects sufficient to show prima facie that the confessions were voluntarily made unless the circumstances prevailing at the time they were made, when considered with the age, character and situation of appellant, demonstrate that he was deprived of his free choice to admit, to deny or to refuse to answer. Curry v. State, 203 Ala. 239, 82 So. 489; Palmore v. State, 244 Ala. 227, 12 So.2d 854; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Canty v. Alabama, 309 U.S. 629, 60 S.Ct. 612, 84 L.Ed. 988; White v. Texas, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Vernon v. Alabama, 313 U.S. 540, 61 S.Ct. 833, 85 L.Ed. 1509; Lomax v. Texas, 313 U.S. 544, 61 S.Ct. 956, 85 L.Ed. 1511; Ward v. Texas, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663; Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; Malinski v. New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029.

Appellant was approximately twenty-one years of age at the time the alleged crime was committed. He claimed that he could neither read nor write but it was shown by his own witnesses that he finished the fifth grade in school. He served in the Navy during the late war.

Late in the afternoon of May 1, 1945, five days after the death of Louie, appellant and his wife, Annie Bell Phillips, voluntarily surrendered themselves to the police authorities of the City of Gadsen. They were taken in custody in the vicinity of the Etowah County Jail by Detective John Dismukes, who drove them to the city jail, a short distance away.

Upon arrival at the city jail, Annie Bell was placed in a cell with some other Negro women. The evidence for the State tends to show that she was questioned in regard to Louie's death from about 9:30 p. m. until just before midnight and at that time made a statement implicating appellant. She signed a written statement on the following morning, according to the evidence for the State.

The evidence for the State shows that appellant was placed in a cell with other Negro men when he was first brought to the city jail, where he remained until shortly after midnight, when he was awakened by two detectives and told that they wanted to talk to him. He was immediately carried to the office of the Captain of Detectives. Present at that time in addition to appellant were Chief Boman, Captain Fisher and Detectives Dismukes and Gramling. Appellant was seated in a chair. He was not placed under a bright light nor is there any evidence that the office where the questioning took place contained any high-powered lights nor such devices as are sometimes said to be found in a homicide investigating office. He was not required to disrobe. Appellant was told that he was going to be questioned about the death of Louie and that anything he might say would or could be used against him. He did not request a lawyer but was advised that he could get one. He was advised that his wife had already made a statement about the death of Louie and was asked if he wanted to tell the truth about it. At first appellant denied any knowledge of the facts connected with the death of Louie, but within a reasonable length of time after the questioning began he admitted his guilt and then proceeded to relate in detail the circumstances connected with the murder and robbery of deceased and the flight of himself and wife. This entire period of questioning lasted not over three hours. There is nothing in the evidence introduced by the State to indicate that the questioning was so severe and continuous as to require the officers to question in relays. It does not appear that any request of appellant for food, drink or cigarettes was denied. The evidence for the State does not show clearly that the officers were armed but we think the fair inference is that they each carried a pistol. Such was the requirement of the police department. It does not appear that any friend or relative of appellant was denied permission

to see him. His mother knew that he and his wife had surrendered themselves.

The foregoing is, we think, a fair statement of the conditions under which the first oral confession was made, according to the State's evidence, and it was this evidence upon which the trial court had to act in passing on the question as to whether or not the State had rebutted the presumption of the involuntary character of the confession.

The questioning of a suspect while in the custody of law enforcement officers is not prohibited either by the common law or by the Fourteenth Amendment, nor is a confession rendered inadmissible solely by virtue of the fact that it was made while the accused was in the custody of such officers. Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481. Under the decisions of this court the fact that a confession is made while the maker is under arrest does not render it inadmissible. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Dyer v. State, 241 Ala. 679, 4 So.2d 311; Stone v. State, 208 Ala. 50, 93 So. 706; Curry v. State, supra; Redd v. State, 69 Ala. 255. Nor is the confession rendered inadmissible merely by virtue of the fact that the officers to whom the confession was made were armed. McElroy v. State, 75 Ala. 9; Hornsby v. State, 94 Ala. 55, 10 So. 522; Flanigan v. State, 247 Ala. 642, 25 So.2d 685. The evidence for the State shows that the officers did not intimidate the appellant in any way and that as police officers they were required to be armed when on duty.

The fact that appellant was asked if he wanted to tell the truth about the death of Louie does not affect the admissibility of the confession. Redd v. State, supra; King v. State, 40 Ala. 314; Beaird v. State, 215 Ala. 27, 109 So. 161.

The statements made by the officers to appellant to the effect that his wife had made a statement concerning the death of deceased and that they knew a lot about the case were true, as we understand the evidence. The making of such statements to appellant before he confessed does not render the confession inadmissible.

We have given careful and painstaking consideration to the evidence as it relates to the circumstances and conditions under which this first oral confession was made and are clear to the conclusion that they were not such as to be inherently coercive or to have deprived the appellant of his free will to choose either to admit his connection with the crime, to deny any such connection, or to remain silent. We think the confession was clearly admissible under the decisions of the Supreme Court of the United States in Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166, and Lyons v. Oklahoma, supra.

In view of the foregoing we hold that the trial court did not err in admitting proof of the first oral confession into evidence.

The circumstances under which the written confession was made were in all material respects similar to those under which the first oral confession was made and we hold that the written statement of appellant was properly received in evidence. We are to the same conclusion as regards the statements alleged to have been made by appellant at the "pasture" and at the scene of the crime.

After appellant had testified in his own behalf he moved that the confessions be excluded from evidence. The refusal of the trial court to do so is here urged as error. According to appellant, he was placed in a cell by himself when he was first brought to the city jail. He was awakened about 9:30 p. m. and taken to a small room where he was kept until 6 a. m., May 2d. There were six officers present, each of whom kept his hand on his "gun" throughout the entire time. He admits he was seated in a chair but says that Chief Boman pointed his finger at him, cursed him and said that if he didn't tell the truth the officers were going to beat him. He told the officers that he did not know anything about the death of Louie and denied

killing or robbing him. He tried to tell the officers about finding the deceased and his wife in a compromising position, but that every time he made any such reference they hit him on his head with a "black jack" causing blood to flow from his nose. As to the alleged written confession, appellant claims that it was "made up" by Chief Boman and F. B. I. Agent Periman. He did not sign it nor was it read over to him. Appellant denied accompanying the officers to the pasture where the State contends he pointed out the place where he had thrown the hammer. In regard to the trip to' the laundry he contends that he was forced to accompany the officers under threats that if he did not do so, he would be beaten. He denied that he made any admissions of guilt at that time nor did he demonstrate how the crime was committed. When he tried to show them the position in which he found his wife and the deceased, Chief Boman hit him on his head with an automatic pistol.

In refusing to exclude the confessions from evidence the trial court in effect found that appellant had made the confessions as claimed by the State and that he had signed the written confession introduced in evidence. Likewise his actions constituted a finding that the appellant had not been cursed, threatened and beaten as he contended. There is no proof of any illegal methods to obtain the confessions unless the testimony of appellant is taken to the exclusion of the testimony of the police officials of the city, of F. B. I. Agent Periman, of newspaper reporter Calloway, and of the insurance agent Williams, a member of the same race as appellant. We cannot say that the trial court erred in accepting the evidence of the State relating to these matters. The admissibility of confessions is for the court, their credibility for the jury. When confessions are admitted on controverted questions of fact, this court will not revise the rulings of the lower court, admitting them, unless they appear to be manifestly wrong. Bonner v. State, 55 Ala. 242; Goodwin v. State, 102 Ala. 87, 15 So. 571.

During the cross-examination of one of the witnesses for appellant who had expressed an opinion that he was insane, counsel for the State asked the witness, "You knew he went to California last year, didn't you?" The witness replied, "I don't know." Thereupon counsel for the State propounded the following question, "You know he got in that zoot suit business out there?" Counsel for appellant objected, which objection was overruled. The question was never answered. It is here insisted that the question injected matter highly prejudicial to the appellant and that the trial court erred in overruling the objection and in refusing to declare a mistrial as moved for by appellant's counsel. In Cartiledge v. State, 132 Ala. 17, 31 So. 553, the rule is stated: "It appears to be settled by the decisions of this court that the overruling of an objection to a question propounded to a witness cannot be reviewed, or at least furnishes no ground for a reversal, unless the bill of exceptions shows that the question was answered, and what the answer was. Hughes v. State, 75 Ala. 31 and authorities there cited; Allen v. Draper, 98 Ala. 590, 13 So. 529." The question itself was not prejudicial. Any statements which might be considered of a prejudicial nature made in the presence of the jury in regard to this matter were made by appellant's counsel. No reversible error appears in this connection.

The evidence for the State shows that two hammers were recovered from the creek or branch where, according to the contention of the State, appellant admitted that he disposed of the hammer with which he hit deceased. Both hammers were admitted in evidence. Thereafter the court excluded the one referred to as the "claw-hammer" from evidence. Appellant's wife testified in his behalf. She denied that she was present and witnessed the disposition of any hammer. On cross-examination she was shown and permitted to read a written statement which the State contended she had made and signed wherein she stated that she saw the appellant throw two hammers into the creek, one of which she had purchased at a store in Gadsden. She denied having made the statement or having signed it. On further cross-examination the State questioned her as to wheth-

er she made such specific statement contained in the written statement including those referring to the two hammers. Appellant contends that the "clawhammer" having been excluded from evidence, it was reversible error for the court to permit any questions or testimony in regard thereto.

■ Prior statements of a witness in conflict with his sworn testimony given at the trial are admissible to affect his credibility. Cotton v. State, 87 Ala. 75, 6 So. 396. The questions asked this witness on cross-examination were for the purpose of laying the predicate for the impeaching testimony. They related to material matters, and the trial court correctly permitted the State to ask this witness on cross-examination if she had not said that she saw appellant throw two hammers in the creek.

■ The clothes introduced in evidence were sufficiently identified as being those which appellant in his written confession had stated he disposed of in Rome, Georgia, several days after the death of deceased. They were admissible as tending to establish the truth of the confession (Hall v. State, supra; Flanigan v. State, supra; Avinger v. State, 29 Ala.App. 161, 195 So. 279, certiorari denied, 239 Ala. 291, 195 So. 281; Smith v. State, 247 Ala. 354, 24 So.2d 546), also as proof of flight. Bigham v. State, 203 Ala. 162, 82 So. 192. According to the confession of appellant, he left the shoes which he wore at the time of the homicide at a shoe shop in Attalla. The testimony of the proprietor of the shoe shop corroborating this phase of the confession was likewise admissible.

■ Shoes admitted in evidence were identified as being those which the appellant left at the shoe shop on the morning following the homicide. They were shown to have had blood on them, although not of an amount sufficient for the State Toxicologist, an expert witness, to determine whether the blood was that of a human being. The shoes were properly admitted in evidence. Bell v. State, 238 Ala. 586, 192 So. 507; Underwood v. State, 239 Ala. 29, 193 So. 155; Teague v. State, 245 Ala. 339, 16 So.2d 877; Floyd v. State, 245 Ala. 646, 18 So.2d 392; Hunter v. State, 137 Miss. 276, 102 So. 282; Lewis v. State, 220 Ala. 461, 125 So. 802.

■ The State was permitted to cross-examine appellant as to whether he told his wife about having seen her in a compromising position with deceased, whether he continued to live with her and have sexual intercourse with her. Appellant testified that he had never mentioned the matter to his wife and continued to live with her as man and wife. It is contended that the trial court erred to a reversal in permitting this line of cross-examination. With this contention we cannot agree. Coffey v. State, 244 Ala. 514, 14 So.2d 122. The theory of appellant's defense under his plea of not guilty by reason of insanity was that the intensity of the mental shock produced upon him by discovery of his wife's infidelity was such as to unseat his reason and as he expressed it, "he just went crazy." The fact that appellant made no mention of this incident to his wife and continued to live with her as man and wife as if nothing had transpired to mar this marital bliss tends to show that the shock to his mind and finer sensibilities could not have been so very great, at least not so great as to unbalance his mind.

■ The trial court did not commit reversible error in permitting counsel for the State to read an excerpt from a decision of the Court of Appeals to the court in the presence of the jury. Burns v. State, 226 Ala. 117, 145 So. 436. The court could have very properly refused to permit counsel for the State to read from the case in the presence of the jury. But we are not willing to say that in permitting such action he abused the discretion lodged in him in matters of this kind. Davis v. State, 213 Ala. 541, 105 So. 677. Moreover, the jury was instructed by the court in this connection as follows: "Gentlemen, I will charge you with reference to the law of the case, and this law that was read was for the Court's consumption and not for your consumption and I will charge you as to the law of insanity, and all other law at the proper time."

■ In his closing argument, counsel for the State remarked that appellant's wife, a witness in his behalf, had confessed

to having lived in adultery with him. Appellant's objections to this argument was overruled and exception taken. We cannot agree with counsel for appellant that this statement was unsupported by the evidence and that it tended to affect injuriously the credibility of this witness. On the contrary, we think the statement of the solicitor was a reasonable inference to be drawn from the evidence. There was no error in overruling the objection to this argument. Morris v. State, 234 Ala. 520, 175 So. 283. Moreover, it was very unlikely that the credibility of this witness was materially affected by this argument inasmuch as she had testified that she had engaged in several acts of sexual intercourse with deceased since her marriage to appellant.

■ Charge No. 13 was correctly refused. It is involved, confused and misleading, and argumentative. Shikles v. State, 31 Ala.App. 423, 18 So.2d 412; Shelton v. State, 144 Ala. 106, 42 So. 30.

■ Refusal of Charge No. 24 was without error. Similar charges were held to be argumentative in Braham v. State, 143 Ala. 28, 38 So. 919; Hussey v. State, 86 Ala. 34, 5 So. 484.

■ The following unnumbered charge was correctly refused: "The court charges the jury that if you are reasonably satisfied that the killing of Henry Louie can be attributed to the defendant's mental unsoundness as the sole cause thereof, you must find the defendant not guilty." The legal test of irresponsibility for crime is not that defendant be of unsound mind, criminate between right and wrong with but the mental incapacity at the time to disregard to the crime charged or the inability by reason of a mental disease to refrain from doing wrong. Reedy v. State, 246 Ala. 363, 20 So.2d 528.

■ The court has given careful consideration to the evidence in this case, and the conclusion has been reached that we would not be justified in pronouncing the verdict palpably wrong and unjust. We are unwilling, therefore, to say that the action of the trial court in overruling appellant's motion for a new trial constituted error to reverse.

Duly mindful of our duty in cases of this character, the record has been examined for any reversible error, whether pressed upon our attention or not. We have herein dealt with all questions calling for serious treatment.

We find no reversible error in the record, and the cause is due to be, and is affirmed.

Affirmed.

All the Justices concur, except BROWN, J., who dissents.

BROWN, Justice (dissenting).

I am of opinion that it was error for the court to permit special counsel for the prosecution, after the evidence was closed and after it had been determined that other counsel would make the argument for the state, to read in the presence of the jury an excerpt from the opinion of the Court of Appeals in Wade v. State, 18 Ala. App. 322, 92 So. 97, 99, embodying the following statement:

"The defense of insanity in this case, to say the least of it, appears to be a crude quality of camouflage. The evidence in support of it is barely sufficient to authorize the submission of that question to the jury. Trial courts cannot be too careful in seeing to it that this humane defense permitted by law is not prostituted and used as a cloak to shield a criminal in distress. Juries should not be misled by references to irresistible impulses. They may well look with suspicion on non-expert opinions given by close relatives and well-wishing friends that claim to have observed mental peculiarities for some period of time prior to the commission of the crime, but who have not taken any steps towards having the defendant detained or restored through the intervention of scientific treatment. A man sufficiently unbalanced to be excused from the penalty for crime is sufficiently unbalanced to be the object of solicitous care on the part of intimate friends and relatives as a general rule.

"An irresistible impulse generated by wicked propensities will not excuse the violation of law. Depravity is not a disease. High temper, hot blood, and passion

are not such mental ailments as will excuse the commission of crime. * * *."

The reading of the above statement was permitted after counsel for the defendant had requested that the jury be allowed to retire, which request was denied, and then counsel objected to said reading from said opinion. The manifest purpose of this character of argument was to invite comparison between the facts in the Wade case and the case on trial and to prejudice the jury against the defendant's case. The statement of the court to the jury was not sufficiently strong to eradicate the damaging consequences of this act. And there is no doubt in my mind but what this strongly tended to prejudice the jury against the defendant's defense of insanity. The insistence that this excerpt was read to the court for "his consumption" and enlightenment is the purest of camouflage. The jury was not instructed not to consider the statements of facts embodied in the excerpt from the opinion of the Court of Appeals read in their presence. Western Union Tel. Co. v. Benson, 159 Ala. 254, 275, 48 So. 712; Louisville & N. R. Co. v. Cross, 205 Ala. 626, 88 So. 908; Davis v. State, 213 Ala. 541, 105 So. 677; Stewart v. State, 78 Ala. 436; Williams v. State, 83 Ala. 68, 3 So. 743; Yarbrough v. State, 105 Ala. 43, 16 So. 758; Walkley v. State, 133 Ala. 183, 31 So. 854.

For this error, in my judgment, the defendant should have a new trial. I, therefore, respectively dissent on this point.