117 So.2d 355

John F. MINIRTH

v.

STATE.

7 Div. 586.

Court of Appeals of Alabama.

Nov. 10, 1959.

Rehearing Denied Dec. 1, 1959.

Miller, 204 Ala. 234, 85 So. 700; Norris v. State of Alabama, supra.

Frank B. Embry, Pell City, for appellant.

MacDonald Gallion, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

Minirth was caught by a Federal revenue agent at a still. The still was fired up but had not been capped.

When arrested Minirth stated the still was his and Mig Mayner's and that he was distilling because he needed money.

One of the agents testified the apparatus was a complete still although uncapped and without the condenser or lead pipes hooked up. The other agent, on cross-examination, stated:

"Q. I will ask you whether or not, again, you could have made whiskey in that still?

"A. Yes, sir, you could.

"Q. Will you tell the Court how you could have made that whiskey without doing any more to that still?

"A. Yes, sir. Your fumes that come off that still when it is heated, the vapor is alcohol; that is whiskey. In order to use it it has to be condensed. In the olden days you have heard the term 'corn squeeze'. That came from throwing a blanket over this opening, catching these fumes and squeezing them out; it didn't have a cap or condenser."

Minirth took the stand and denied any interest in the still or any part in its operation. He had only gone to the still yard to get some whiskey. He had confessed nothing.

We consider there was sufficient evidence to allow the jury to choose be-

tween the defense and prosecution, even without reference to the rule as to having component parts of a still under Code 1940, T. 29, § 132.

No exception was taken to the oral charge. Minirth moved the court to give four written charges, two of which the judge refused, viz.:

"2. I charge you gentlemen of the jury that the mere presence of the defendant at a moonshine still on premises not his own will not warrant a conviction for illegal possession.

"4. I charge you gentlemen of the jury that unless you are convinced from the evidence beyond a reasonable doubt that the defendant had in his possession a complete still over which he exercised some dominion, your verdict must be for the defendant."

■ Charge 2 leaves out the effect of § 132, supra. Also, as the trial judge aptly stated on denying a new trial, "possession" should have been followed by "of a still," otherwise the jury could have misconsidered Minirth's presence under possessing whiskey, a crime for which he was not on trial.

■ Charge 4 is bad because (a) count 1 of the indictment charged Minirth unlawfully distilled, hence an acquittal under possession of a still might not necessarily free him of making whiskey as an aider; (b) "a complete still" is misleading under § 132, supra; and (c) aiding and abetting under the evidence could have fitted Minirth's actions as much as the role of principal.

We have carefully considered the entire record and consider the judgment should be

Affirmed.

### On Rehearing

Minirth's purported confession came into evidence after the solicitor had asked one Federal agent as to whether he had induced Minirth's statement either by way of hope of better treatment or by coercion. The questioning did not directly bring out the names of those present at the time of the statement; nor did it ask if any one else in the presence of the witness had offered any inducement.

We have excerpted from the direct examination of these Alcohol and Tobacco Tax Unit investigators:

(a) Gene P. McGinnis:

"Mr. Swann: Who had the defendant in custody?

"The Witness: I said Mr. Speer.

"Mr. Swann: Who is he?

"The Witness: He is the other officer. He had Minirth in custody at the still. The burners—

"The Court: He had Minirth, this defendant?

"The Witness: Yes, sir. * * *

* * * * * *

"Q. (By Mr. Hodges) Was Mr. Minirth at the still?

"When I returned with my defendant he was there in custody.

* * * * * *

"Q. Did Mr. Minirth make any statement to you? A. Yes, sir, he did.

"Q. Did he make an oral or written statement? A. Oral.

"Q. He made an oral statement? A. Yes, sir.

"Q. Prior to his making this oral statement did you make any offers to him or any promise of reward? A. No, sir, I didn't.

"Q. Did you use any force or exert any intimidation or force against him? A. No, sir.

"Q. Did he, in your judgment, make the statement freely and of his own accord, voluntarily? A. Yes, sir, he did.

"Q. I will ask you what that statement was.

"Mr. Swann: We object. The proper predicate has not been laid.

"The Court: Overruled.

"The Witness: He said he was caught. I asked him if he had registered the still according to law, and he said he hadn't. I asked him if he had given bond and he said he hadn't. I asked him if he had posted a sign at that still according to law, and he said he hadn't. He laughed and he said he was caught. He had paid off—his wife had been sick and he had paid off the doctor bills with that money.

"Mr. Swann: We object to that.

"The Court: I sustain the objection as to what he paid off with that money.

"The Witness: He said they were intending to run between thirty and thirty-five gallons of liquor at that time —if they had not been caught they would run between thirty and thirty-five gallons of liquor. I also questioned him about his name being on the butane tank.

"Mr. Swann: I object to that. It has not been shown yet his name was on the butane tank. I would like to ask that you erase that from the minds of the jury. This witness is spouting off at the mouth. Make him answer the question.

"The Court: I sustain the objection. Confine yourself to answering the question. He asked him what was said, and I sustain that part of it. He is answering the question, but part of it I think objectionable. I will change my ruling. I will let that in. I think I was wrong.

"Mr. Swann: It has not been shown by the evidence yet there was anything on the butane tank.

"The Court: That is where I got off base, because he is just stating what was said.

"Mr. Swann: We are going to except to the Court's ruling.

"The Court: Overruled.

"The Witness: I asked him how come his name was written on the butane tank. He said he didn't know it was written on that, that he hadn't noticed it. I showed him the writing on the tank there, where it said, 'Minirth; don't paint' written on the tank.

"Q. (By Mr. Hodges) Mr. McGinnis, this writing you are referring to, was this actually printed or written? A. It was written in pencil.

"Q. Written in pencil? A. Yes, sir.

"The Court: I am going to sustain the objection to that writing, on the tank, because there is better evidence than that.

"Mr. Swann: There sure is.

"The Court: I sustain the objection to that part of it.

"Mr. Swann: I would like to remove it from the minds of the jury.

"The Court: Yes. Gentlemen, I sustain the objection to the testimony of this witness as to what was written on the tank, but I am not sustaining the objection as to what this witness said Mr. Minirth said about whatever was written on the tank, if anything. I am just letting in that conversation.

"Q. (By Mr. Hodges) Who was with you, if anyone, when the arrest was made of the defendant in this case, Mr. Minirth? A. Charles Speer.

"Q. Was he actually present with you at that time? A. At that time, when this other man saw me and fled I chased the other man, and this other

man ran down the little road there which led from the still up to this lake behind Minirth's house. I caught him in Minirth's yard. When I got back to the still Minirth was in the custody of Mr. Speer at that time."

(b) Charles E. Speer:

"Q. Did Mr. Minirth, the defendant in this case, say anything to you at this time? A. Yes, sir. He admitted that the still—

"The Court: Wait a minute. He just asked you if he said anything.

"The Witness: Yes, sir.

"Q. (By Mr. Hodges) Was this an oral or written statement? A. It was an oral statement.

"Q. Nothing was reduced to writing and he didn't sign anything? A. No, sir.

"Q. Did you exert any intimidation or force or coercion in making him make this statement? A. No, sir.

"Q. Did he make it freely and voluntarily of his own accord? A. Yes, sir.

"Q. Did you make any promises to him? A. No, sir.

"Q. What was that statement that he made?

"Mr. Swann: We object.

"The Court: Overruled.

"Mr. Swann: We except.

"A. He stated that the stills were theirs; he was doing it to make money; he needed the money."

Speer on cross:

"Q. Did you ask this man if he wanted to make any statement? A. I didn't ask him if he wanted to make any statement. I didn't, no.

"Q. I will ask you whether or not it is customary to ask if they want to make any statement. A. It is customary for one of the officers or one of the investigators to ask.

"Q. I will ask you whether or not you heard Mig Mayner say that that was his outfit. A. No, sir, I didn't hear him.

"The Court: What?

"The Witness: Mig Mayner say 'This is my outfit.'

"Q. (By Mr. Swann) Did either one of the two men make a written statement to you? A. No, sir.

"Q. I will ask you whether or not this man made any statement? A. Written or oral or otherwise?

"Q. Written or oral. A. I heard him state—make an oral statement, yes, sir.

"Q. What did he say? A. Words to this effect, 'That this is our—This outfit belongs to us. This is our stills. I was only doing it because I needed the money.'"

■ In Carr v. State, 17 Ala.App. 539, 85 So. 852, 853, we find (per Bricken, P. J.) what is unquestionably the rule as to the burden on the State to show everything around a confession which would bear on its being free willed:

" * * * It is true that the witness Domingas stated:

" 'I did not offer him any promise, or offer him any inducement, or make any threats against him, or tell him it would be better for him.'

"This inquiry upon the voir dire of this witness should not have been limited to the witness himself, but it should have been extended to include others who were present. In each instance the question is limited: Did *you* offer any inducements, etc.; or, did *you* make any threats? This will not suffice, when it is shown that others were

present at the time of the alleged confession; for while the witness could truthfully answer that, so far as he was concerned, he did none of these things, others present might have made assurances or promises, or made threats against the accused, or might have coerced him in some other improper manner; so the question propounded should apply, not only to the witness himself, but should extend to any one else in his presence or hearing. * * "

■ Moreover, the Carr case holds that, where the lower court certifies a record as containing all the evidence, the review of the testimony in the appellate court will not be aided by any presumption as to rightness of the trial judge's ruling admitting the confession in evidence.

■ Where the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness (even though there is also credible testimony to the contrary) were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Blackburn v. State, Ala.App., 109 So.2d 736. After all, the trial judge's ruling is only on admitting the evidence. The State still has the burden of convincing beyond a reasonable doubt.

As put by Lawson, J., in Phillips v. State, 248 Ala. 510, 28 So.2d 542, 550:

"* * * We cannot say that the trial court erred in accepting the evidence of the State relating to these matters. The admissibility of confessions is for the court, their credibility for the jury * * *"

■ The instant facts somewhat parallel those in Duck v. State, 38 Ala.App. 652, 92 So.2d 55. The error in admitting McGinnis's testimony as to Minirth's confession was cured by the later evidence of Speer.

It is clear that the two officers and the two prisoners were the only persons present.

We think it would be here illogical and contrary to experience to expect that any inducement moving Minirth could have come from his fellow captive, Mig Mayner. By bringing out the absence of menaces or promises from the Federal agents seriatim, the solicitor closed the circle.

Application overruled.