166 So.2d 511

**Henry Bedford SAWYER**

v.

**STATE.**

**6 Div. 14.**

Court of Appeals of Alabama.

June 30, 1964.

---

T. K. Selman and Hugh Beaird, Jasper, for appellant.

Richmond M. Flowers, Atty. Gen., and Owen Bridges, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant, Henry Bedford Sawyer, was indicted by the Grand Jury of Fayette County for the offense of assault with intent to murder one Selma Sanford. At the time of arraignment, appellant entered pleas of not guilty and not guilty by reason of insanity. He later struck the plea of not guilty by reason of insanity and went to trial upon the plea of not guilty. Upon a jury verdict of guilty the appellant was sentenced by the court to six years in the State Penitentiary, hence, this appeal.

The principal witness for the State, Sheriff Selma Sanford, testified that he had been informed that appellant was involved in a fight with one Titus Stovall on the afternoon of August 18, 1963, near the Hollingsworth Store in Fayette County, Alabama. Sheriff Sanford stated that he went to see Stovall at the hospital, and that, upon a proper warrant being issued for the arrest of appellant, he, Deputy W. B. McIntosh and Deputy Dave Lemon went to appellant's home at about 9:00 or 9:30 P.M. on the same night for the purpose of executing the warrant. Sheriff Sanford further testified that they drove into appellant's driveway to within a distance of ten feet from the house and left the head lights shining on the house and windows. He stated that the three of them went to the house and knocked on the door, stated who they were, and said that they had come to arrest appellant. When the officers failed to receive an answer after they knocked they went to the windows, looked in and saw Sawyer lying on the bed but were unable to say whether or not he was asleep. Sheriff Sanford stated that appellant then sat up, reached under the mattress and got a gun and started shooting at them and said, "I will kill every damn one of you."

Witness Sanford further testified that the appellant said that he gave himself up as soon as he saw the star on the Sheriff's car, that he thought they were the Stovalls coming after him, and that he didn't expect the officers to come for him until the next morning.

Appellant Sawyer testified, on his trial for assault with intent to murder, in his own behalf to the following facts: that he was in his home with no neighbors nearby, lying on the bed asleep with no lights on when he was awakened by a shot, after which he heard someone running around the house and that when he got up, there were car lights shining in his face through his window. He said that all of this occurred about 2½ to 3 hours after his fight with Titus Stovall and that he believed that it was the Stovalls after him and that he shot at the headlights of the

car and knocked one out and reloaded his gun but that he later discovered that the persons outside were law officers and gave himself up. The record discloses that appellant remained in the Fayette County Jail after his arrest on August 18 until August 23, 1963, at which time he procured a reduction in bail.

The Grand Jury returned its indictment against the appellant on August 26, 1963, and the trial date was set for August 28, 1963. On the afternoon of the 26th the appellant filed a motion for a continuance alleging insufficient time in which to prepare an adequate defense. Upon the hearing of appellant's motion for a continuance, Mr. T. K. Selman, Attorney, gave the following testimony on direct examination in support of the motion:

"My name is T. K. Selman. I am H. B. Sawyer's Attorney. I was retained in this case on August 23, 1963, and as soon as I was retained I came to Fayette, Ala. from Jasper, Ala., and had a conference with Mr. James K. Davis, and after our conference Mr. Davis, the solicitor, reduced the bail on the two alleged offenses of Assault with intent to Murder from $5,-000 each to $1,500 each and after 6:00 P.M. on August 23, 1963, Mr. Sawyer was released from bail. Now, I was unable to have any conference with him at any length until the morning of Saturday August the 24th., it was only at that time that I began to learn of his extensive injury and also what appears, from the records that I could find, to be a mental ailment.

"I discovered on going further into the matter that he had been injured in a farm accident on February 10, 1962, and that as a result of his injuries which occured in the region of his stomach, I discovered from investigation that his bowels were severed and he had had four different operations and he stayed in hospitals perhaps as much as twelve months since February 10, 1962.

"I discovered that he stayed a period of several months in the Jasper Community Hospital in Walker County, Alabama, and that Doctor Robert Schlitz was his physician. On trying to locate Dr. Schlitz I discovered that he was out of town on vacation and could not be reached. Then I discovered in looking at the hospital records that he had been treated by a Doctor Cassio in 1961 in the Jasper Community Hospital and his admission at that time had been diagnosed as anxiety. In trying to locate Dr. Cassio I found out he had been out of the state for a year and a half. I discovered that he was treated further by the Veterans Hospital in Memphis, Tennessee, and of course I had no way in the short length of time I have had to get any testimony from any of the Doctors in the Veterans Hospital in Memphis Tennessee, or I know from past experience with Veterans Hospital in Memphis, Tennessee that they are not subject to subpoena from State Court on [and] the only way to get those records is by deposition and time in this instance was and is inadequate for me to do so by today.

"I also discovered, and this is on and after August 23, 1962, that as a part of his treatment for these injuries he received in the accident on February 10, 1962, he has been sent to a hospital at Harland, Kentucky, and there he received treatment and an operation. I have, of course been unable to take any depositions from the doctors in Harland, Kentucky, as it does not come under the process of this court and the same thing is true of the records of that hospital.

"In my investigation and talking to his people, I decided he should enclose a defense by reason of insanity, in addition to his plea of not guilty and I will be able to rely rather heavy on his injury and I also learned from my client, H. B., that he had been in a hospital in Arkansas just almost

immediately before he was injured on Feb. 10, 1962, which he understood to be a mental hospital. Of course, I have had no opportunity to get those records.

"My investigation has revealed from his people that [he] is at this time a person suffering from a mental illness and we had hoped to prove that by the use of the Doctors that we are unable to reach, and by use of course of those people who have seen and observed him. As I have said, I had a subpoena issued by this court to Dr. Robert Schlitz, and that subpoena was issued on the 26th. of August, 1963, immediately after this indictment was returned and this Defendant arraigned and put in this plea. I could not issue a subpoena until the indictment was returned and the case set. I issued a subpoena at that time and that subpoena, to my knowledge, went to the Sheriff of Walker County for Dr. Robert Schlitz and I called at noon today, this is a little after 1:00 P.M. that we are taking this testimony.

"I called the Sheriff's office at noon today and talked with the Clerk there, and he informed me that they had been unable to serve that subpoena because Dr. Robert Schlitz is out of town. And as a result of our inability to get this medical testimony, the only medical testimony we have at all are records of the Jasper Community Hospital and this case having occured on the 18th day of August, 1963, and Defendant remaining in jail until the 23rd day of August, 1963 of course time has been short and I wasn't in the case at that time and since August 23, 1963, until today has been insufficient time for me to take depositions of the various physicians in regard to this special plea. I believe that is the only sworn testimony that I care to make at this time. Anything you want to ask me Mr. Davis?

"Mr. Davis: No, sir.

"MR. SELMAN: May I call Selmer Sanford, he is outside.

"MR. SELMAN: Judge I assume that this testimony is to be in each case. no point in taking the same thing again for the other case.

"THE COURT: It will apply to both cases.

"MR. SELMAN: It will apply to each case separately and severally?

"THE COURT: Let the record show this testimony will apply to each case separately and severally."

At the hearing on the motion for continuance, at which time appellant tried to establish showings for his insanity plea, held on the morning of August 28, the appellant offered evidence showing that he had been undergoing medical treatment at various hospitals in several states as a result of a serious accident incurred at his farm. He introduced testimony showing that he had received treatment in the Jasper Community Hospital in Walker County and the doctor that treated him was on vacation and unavailable as a witness at that time. The evidence shows that appellant was also confined in Veterans Hospitals in Harlan, Kentucky, Memphis, Tennessee, and Little Rock, Arkansas, and due to the fact that these hospitals were outside the jurisdiction of the court more time was needed to take depositions from material witnesses on his desired plea of not guilty by reason of insanity. The appellant also testified that he was confined in the hospital in Arkansas prior to the time of his farm accident and that it was primarily a hospital for mental illness. He also testified that he was a patient at the Veterans Hospital in Tuscaloosa, Alabama, in 1945 and 1946, which is likewise an institution for nerve and mental disorders.

The appellant's mother and sister also took the stand at the hearing on the motion for a continuance and testified that in their opinion the appellant had been of unsound mind since his farm accident.

The State of Alabama filed an answer to the motion for continuance which was in pertinent part as follows:

"The State of Alabama denies that the defendant is insane, but is convinced that to the contrary, he is of sound mind. Neither is there any apparent physical disability that would hinder him in any way in the trial of this case. The State of Alabama contends that all the allegations of illnesses stated in the defendant's motion for a continuance are merely to arouse the sympathy of the court, that none of them have anything to do with the mental condition of the defendant on August 18, 1963, the date of the offense, and the State of Alabama is further convinced that the defendant is not sincere about his defense of 'Not guilty by reason of Insanity', but merely interposed said defense in an effort to seek a continuance of this cause.

"The State of Alabama further contends that H. B. Sawyer has had at least ten days to prepare his defense; that he has known for over one week that he would be tried this term of Court if he were indicted; he has had a very able and competent attorney employed for at least five days before the trial to assist him, and said attorney also knew at least five days before the trial that the cases would be set down for trial this term of Court; and, he has had several members of his family talking to witnesses for him before he was released from jail. For these reasons, he has had ample time to prepare his defense, and there is absolutely no reasons why he cannot receive a fair trial, nor will the trial of this case on this date be unfair to him, or deprive him of his constitutional rights.

"The State of Alabama is further convinced that the motion for continuance in this case is made solely to attempt to have more time, hoping to weaken the case against the defendant.

"The matters involved in this case are of a serious nature, and if defendant be guilty, then the people, including the officers of the law, should be protected from him as soon as possible. If the defendant is not guilty, he should be released and not have such accusation resting against him."

The State, in support of the answer it filed to appellant's motion, examined Sheriff Selma Sanford who testified that he had never seen the appellant to know him before he arrested him, but that he had "seen him around" before he arrested him and that, in his opinion as a layman, he was sane on the date of his arrest.

Solicitor James K. Davis testified in part as follows:

"Previous to this I had already discussed with H. B. Sawyer's mother and sister that if he were indicted that because of the seriousness of the offenses, that we intended to try him during this present term of court. At the time I talked to T. K. Selman, his attorney, on August 23rd, I also told him it was our intention to try H. B. on these cases this term if he was indicted. In fact, that was one of the reasons for reducing the bond and Mr. Selman assured me he would bring him present in court on August 26th. for arraignment, which was done. I have known H. B. for some two or three years and have talked to have [him] on a few occasions; have had an opportunity to observe him and it is my opinion as a lay witness that he is sane. Of course, several attempts have been made to continue this case and I am convinced in my own mind that insanity as a defense is without foundation. Also we have, I gave to Mr. T. K. Selman the address, so far as I knew, the names of all the witnesses that the State intended to use when he was in my office on August the 23rd. I feel that we have given him

every opportunity to prepare his case, that we have been as fair with him as we know how to be in allowing him to present his defense and I feel that the motion for continuance of the case is solely made with hope to weaken the case which the State of Alabama has against him."

When the taking of evidence upon the motion for a continuance was concluded, the following transpired:

"COURT RULING

"THE COURT: Let the record show that after hearing the motion and after observing the Defendant, the Court is of the opinion that the motion should be denied and it is so denied

"MR. SELMAN: Just a minute judge. Mr. Solicitor which case do you plan to try first?

"MR. DAVIS: The Assault with Intent to Murder against Selmer Sanford.

"MR. SELMAN: Judge, in view of the fact that we would be unable to use the things I have outlined in my testimony, to produce any medical testimony in regard to his mental condition, based on my experience as an attorney in trying murder cases, it is ineffective to attempt to prove by lay testimony a person is of unsound mind. As to the case that he says he shall try first, I shall not [now] withdraw my plea of not guilty by reason of insanity due to the fact that I feel that I could not meet the burden of proof because I haven't had the time to get medical testimony.

"THE COURT: Is that all?

"MR. SELMAN: Yes, sir.

"END OF HEARING"

Parenthetically we do not voice approval of taking testimony on the issue of sanity vel non in passing on a motion for con-

tinuance since this seems a digressive side issue.

At the conclusion of the hearing on the motion for continuance the appellant's trial was had and the jury returned a verdict of guilty of assault with intent to murder. On September 25, 1963, appellant filed a motion for new trial and his primary ground therein was the ruling of the court in refusing his motion for continuance.

■ It is well settled law in this State that the granting or refusing a continuance is in the trial court's discretion and its exercise will not be reviewed unless abused. Logan v. State, 251 Ala. 441, 37 So.2d 753; Welch v. State, 28 Ala.App. 273, 183 So. 879; cert. den. 236 Ala. 577, 183 So. 886; Ala.Dig.Crim.Law, ☞586.

■ The burden of proving the defendant's plea of not guilty by reason of insanity was on the defendant and we are of the opinion that two days intervention between the time of indictment and the time of trial was insufficient to procure the necessary available evidence for such defense. This court in Morris v. State, 25 Ala.App. 156, 142 So. 592, speaking through Judge Samford, held the following:

"However, the court is of the opinion, after reading and considering the entire record en banc, that the defendant's motion for a new trial should have been granted on the fourteenth ground of said motion. The law contemplates that every citizen charged with crime shall have a speedy trial, but without such undue haste as will force a trial without a reasonable time for preparation. Under the facts of this case, including the circumstances surrounding the trial, this court feels and so holds that the defendant has not received such a trial as is contemplated by the Constitution. Milligan v. State, 208 Ala. 223, 94 So. 169. For the error of the trial court in refusing the motion for a new trial on the fourteenth ground, the judgment of affirmance is

set aside, and the judgment of the circuit court is reversed, and the cause is remanded."

The action of the lower court in trying this appellant ten days after his arrest for the offense for which he was tried, five days after release from jail on bail for such offense, and two days after indictment therefor, together with the nature of the defense he sought to interpose, constituted an abuse of discretion by the trial court and probably prevented the appellant from having sufficient time to procure the necessary witnesses and other proof for his defense. No time herein referred to shall be construed as creating an arbitrary rule of time for the trial or continuance of a criminal case.

Here appellant's motion for a new trial should have been granted.

This cause is due to be and the same is hereby

Reversed and remanded.