184 So.2d 368

**Jim GODWIN**

v.

**STATE.**

**8 Div. 935.**

Court of Appeals of Alabama.

Aug. 18, 1964.

Rehearing Denied March 9, 1965.

Affirmed on Mandate Jan. 18, 1966.

Further Rehearing Denied March 8, 1966.

166

John B. Tally, Scottsboro, for appellant.

Richmond M. Flowers, Atty. Gen., and Peter M. Lind, Asst. Atty. Gen., for the State.

CATES, Judge.

The opinion heretofore filed on August 18, 1964, is withdrawn and the following becomes the opinion of the court.

Godwin appeals from a judgment on a verdict finding him guilty of possessing a still for making prohibited liquor. Code 1940, T. 29, § 131. He also moved for new trial—unsuccessfully.

Though indicted in 1961, Godwin was not brought to trial until March 20, 1963.

Meanwhile, he seems to have run afoul of Federal law, for we find the circuit court granted the State a writ of habeas corpus ad prosequendum to bring him from the Maxwell Field Prison Camp at Montgomery. This writ was addressed to the Superintendent of the Camp.

Immediately on being brought into court —on the day before the trial—counsel moved for a continuance. Among other grounds he argued, "* * * here is a man who was brought up here in custody, and has no opportunity to get ready for the trial of his case."

More seriously the undisputed evidence— borne out in brief and argument—shows that the United States marshals remained in the room at the Jackson County Court-house when Godwin's counsel sought to confer with him that morning.

Thus Godwin testified in support of the motion:

"And during the time John B. Tally, your Attorney, has been representing you he has only conferred with you a short while this morning here in the Court House while you were in the custody of two Federal Marshals?

"A. Yes, sir."

The trial judge considered there had been time enough for Godwin to have talked to counsel. This view ordinarily would have been dispositive of the motion for continuance.

However, the United States marshals, by remaining in the consultation room, interfered with a fundamental right assured Godwin by both State and Federal Constitutions. The right of counsel implies the right of private audience.

When the Attorney General of the United States, through his prison wardens, brings a defendant to a state court, that defendant, until convicted, is presumed innocent. He is entitled to—and may be in more need of— all the rights afforded by our organic acts.

The federal government in making such an ad hoc surrender must do so completely even though it can later take the prisoner up again.

Code 1940, T. 41, § 223, provides:

"§ 223. No officer or person having the custody and control of the body or liberty of any person under arrest, shall refuse permission to such arrested person to communicate with his friends or with an attorney, nor subject any person under arrest to any form of personal violence, intimidation, indignity, or threats for the purpose of extorting from such person incriminating statements or a confession. Any person violating the provisions of this section shall be guilty of a misdemeanor."

It would be farcical indeed if the badge of his office were to stand between a United States marshal (or indeed any peace officer) bringing a prisoner to be tried by a state court and his lawyer.

Under this Code section (§ 223, supra), the marshals should have accorded the prisoner his full rights—or have turned him over to the state court in open court so that the sheriff could have made him accessible to his attorney within the meaning and spirit of the Constitution and statute.

Pertinently, the appellant in brief says:

"To deny a defendant the right to private consultation with his employed attorney is tantamount to denying him the right to counsel."

This situation was properly presented to the trial judge and was at a critical time in and hence prejudicial to Godwin's trial. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. See Sawyer v. State, 42 Ala.App. 386, 166 So.2d 511.

We quote from Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921:

"Petitioner's additional attack upon the hearing afforded him centers upon the denial of his motion for a continuance which is said to have deprived him of his constitutional right to engage counsel and to defend against the charge. * * *

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. * * *"

The State's application for rehearing is overruled. The judgment below is due to be reversed and the cause remanded for new trial.

Reversed and remanded.

After Remandment

PER CURIAM.

On authority of Godwin v. State (279 Ala.Sup., 286 Ms.), 184 So.2d 374, (8 Div. 194) the judgment below is

Affirmed.

CATES, Judge (dissenting).

## I.

Again, as was done in Fisher v. State, 23 Ala.App. 544, 129 So. 303, it seems to me needful to remind our revered Chief Justice that "sometimes even great 'Homer nods.'" See Davis v. Holman, 5 Cir., 354 F.2d 773 (cert. den. April 18, 1966, 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 359) and the Sixth and the Fourteenth Amendments to the Constitution of the United States.

## II.

Moreover, while Godwin was plainly guilty of the misdemeanor of possessing a prohibited liquor, I seriously doubt that, as to the felony of possessing a distillery, the evidence meets the requisites of United States v. Romano (Ms.), 86 S.Ct. 279.

The apparatus found here (see R. 38) was no complete still. Stover v. State, 36 Ala.App. 696, 63 So.2d 386. Minirth v. State, 40 Ala.App. 527, 117 So.2d 355, is easily distinguishable.

## III.

I forego respeculation—as some recent Federal decisions might foment—regarding the constitutionality of the same transaction supporting separate convictions and sentences in both Federal and State courts.

Amendment XXI, U. S. Constitution, § 1, explicitly repealed Article XVIII, including § 2. Section 2 of Amendment XXI does not mention possession of an apparatus for the manufacture of an intoxicating liquor.

### On Rehearing

PER CURIAM.

The appellate courts of this State disagree with the Fifth Circuit Court of Appeals as to the breadth of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

In the application filed here January 28, 1966, two interdependent points are pressed to show error.

*First,* an accomplice admitted before the raiding officers that he "didn't know when the still was run, that that was Jim Godwin's part."

It is claimed that this breaches the rule of not receiving an after the fact admission of a co-conspirator. This rule obtains where the defendant is absent. The first four cases (see par. 2, second sentence, Rule 8, revised and amended 277 Ala. xvii) which counsel cites are: Gore v. State, 58 Ala. 391; Everage v. State, 113 Ala. 102, 21 So. 404; James v. State, 115 Ala. 83, 22 So. 565; Delaney v. State, 204 Ala. 685, 87 So. 183.

In Connelly v. State, 30 Ala.App. 91, 1 So.2d 606, Simpson, J., wrote:

"* * * statements of [the] coconspirator made after the termination of the conspiracy are not admissible, unless so clearly related to the commission of the offense as to be a part of the res gestae or unless made in the presence of the defendant and undenied by him, in which latter case they become admissible under the rule of tacit admissions. * * *"

Counsel contends that the examination of the first defense witness afforded the occasion of the claimed error. We deem it needful to set out the whole of his direct and cross-examination:

*"Mr. Charles Nichols, being first duly sworn, testified as follows on behalf of the Defendant:*

"Examined by Mr. Tally.

"Q. Your name is Charles Nichols?

"A. Yes, sir.

"Q. Do you recall the occasion when Jim Godwin was arrested?

"A. Yes, sir.

"Q. You were along with Hamner and Littles when that took place?

"A. Yes, sir.

"Q. Were you over there about two miles of Langston when you and the

other officers saw Jim Godwin here, and Howard Peacock, there together?

"A. Yes, sir.

"Q. This was when they were placed under arrest?

"A. Yes, sir.

"Q. Did you go in there with Mr. Littles about the same time?

"A. Yes, sir.

"Q. Charles, I will ask you if you at any time heard the Defendant, Jim Godwin, here make any statement to either of these Federal Officers to the effect that that was his still?

"A. No, sir, I didn't.

"Mr. Tally: That is all.

"CROSS EXAMINATION

"Examined by Mr. Black.

"Q. Did you hear everything that took place there?

"A. Not everything.

"Q. Were you there when Jim Godwin and Howard Peacock talked to Mr. Hamner and Mr. Littles?

"A. Yes, sir, but—

"Q. I will ask you if you didn't hear Mr. Hamner ask Jim Godwin if he didn't usually run it on Thursday, and he said he didn't have any certain day?

"A. I heard him say they didn't run it any certain day.

"Q. That he just ran it when he got ready?

"A. I didn't hear him say that he just ran the still when he got ready.

"Q. Did you hear Mr. Peacock say in the presence of Mr. Littles and Mr. Hamner that he didn't know when the still was run, that that was Jim Godwin's part?

"Mr. Tally: We object to that. It is irrelevant, incompetent, and immaterial.

"The Court: Overruled.

"Mr. Tally: We except.

"Q. Did you hear that, did you hear Mr. Peacock make the statement that he didn't know when the still was ready to run, that was Jim Godwin's part?

"A. Yes, sir.

"Q. You heard Peacock state that he worked for Jim Godwin?

"A. Not in the presence of the defendant. He did say it, but it wasn't in the presence of the defendant. I heard him say it.

"Mr. Tally: We move to exclude that, and ask that the Jury be instructed to disregard it.

"The Court: That is not to be considered.

"Q. Do you know how much mash was in those two stills?

"A. No, sir, I don't.

"Q. I will ask you if they had 376 gallons in each still?

"A. I wouldn't know.

"Q. Both stills were filled with mash?

"A. Yes, sir, but as far as knowing how many gallons in them, I don't know.

"Q. At that time you were a Deputy Sheriff?

"A. Yes, sir.

"Q. You are not a Deputy now?

"A. No, sir.

"Q. You didn't hear everything that was said there?

"A. No, sir, I didn't.

"Q. You didn't make any notes yourself?

"A. No, sir.

"Q. You were just there assisting Mr. Hamner and Mr. Littles?

"A. That is true."

On original consideration, we relied on the absence of a specific ground of objection asserting a claim of Godwin's not being at the place of Peacock's post facto declaration. We may have been too strict.

That Peacock later related that he worked for Godwin does not, in our view, compel the conclusion that both statements were made with Godwin being there. Moreover, witness Hamner's examination (on page 45 of the record) showed Godwin to have been present at the time Peacock made the confederative admission.

■ Accordingly, we infer that the trial judge's interrogation (R. 45) satisfied him as to the predicate of Godwin's presence and hearing when Peacock made the statement.

*Second.* Godwin would invoke a wider *Escobedo* than this court perceives.

"We conclude counsel reads too much into verbal interstices of Escobedo. There Mr. Justice Goldberg opens for the majority:

"'* * * the refusal by the police to honor petitioner's *request* to consult with his lawyer during the course of an interrogation [in "custody," at police headquarters] constitutes a denial of "the Assistance of Counsel" * * * obligatory upon the States * * *.' (Italics and bracketed matter added.)

"This frame of reference we take to be words of limitation."—Rodgers v. State, 42 Ala.App. 660, 177 So.2d 460, at 464.

We note the pendency of the following cases in the Supreme Court of the United States: Miranda v. State of Arizona, 1965, 86 S.Ct. 885 (to review 98 Ariz. 18, 401 P.2d 721); Vignera v. New York, 1965, 86 S.Ct. 885 (to review 15 N.Y.2d 970, 259 N.Y.S.2d 857, 207 N.E.2d 527); Westover v. United States, 1965, 86 S.Ct. 885 (to review 9 Cir., 342 F.2d 684); Johnson v. State of New Jersey, 1965, 86 S.Ct. 886 (to review 43 N.J. 572, 206 A.2d 737); and People v.

Stewart, 1965, 86 S.Ct. 882 (to review 62 Cal.2d 571, 43 Cal.Rptr. 201, 400 P.2d 97).

■ We conclude with a quotation from Sanders v. State, 278 Ala. 453, 179 So.2d 35:

"But unlike Escobedo, the record in this case does not show that at the time the confessions were made Sanders was denied an opportunity to consult with his lawyer. He did not have a lawyer and made no request for a lawyer.

"In Duncan v. State [278 Ala. 145, 176 So.2d 840] we followed those courts which had held that Escobedo is a controlling precedent only in cases where all the factors specified in Escobedo are present.

"As we observed in Lokos v. State, supra, we realize that the construction which we have placed on Escobedo is not in accord with that placed on that case by some of the federal courts, including the United States District Court for the Middle District of Alabama (Washington v. Holman, 245 F.Supp. 116, decided July 6, 1965), and the United States Court of Appeals, Fifth Circuit (Clifton v. United States, 341 F.2d 649), and that in not following those courts our opinions and judgments may be voided in view of the present broad scope of the federal writ of habeas corpus. But we are not bound by the decisions of any federal court on federal questions other than the Supreme Court of the United States, and until that court says our construction and application of Escobedo are wrong, we will stand by them despite the likelihood of being, in effect, reversed by the lower federal courts.

"We hold that Escobedo does not require a reversal of this case."

Application overruled.

CATES, J., adheres to his separate dissenting opinion on remandment from the Supreme Court of Alabama.